2000 Utah Ct. App. 73

**STATE of Utah, IN the INTEREST OF the Adoption of J.N. and J.N., persons under eighteen years of age.**

**J.N. and R.N., Petitioners and Appellants,**

v.

**State of Utah, Respondent and Appellee.**

**No. 990180–CA.**

Court of Appeals of Utah.

March 16, 2000.

---

2. We play the devil's advocate because appellee did not file a brief. We therefore have the bene-

fit of only NAR's arguments.

Wendy Lems, Larsen & Mooney Law, Salt Lake City, for Appellants.

Jan Graham, Atty. Gen., and Jeffrey S. Buckner, Asst. Atty. Gen., Salt Lake City, for Appellee.

Martha Pierce and Tracy Mills, Salt Lake City, Guardians Ad Litem.

Before JACKSON, Associate P.J., BENCH, and BILLINGS, JJ.

## OPINION

BENCH, Judge:

¶ 1 J.N. and R.N. (appellants) appeal the juvenile court's denial of their motion for relief and intervention, seeking to set aside the adoption of their niece and nephew, J.N. and J.N. (the children) to nonrelatives. We remand for proceedings consistent with this opinion.

## BACKGROUND

¶ 2 In November 1996, the Division of Child and Family Services (DCFS) was awarded temporary custody of the children because the mother was unable to provide proper care. The juvenile court subsequently adjudicated the children as "neglected," affirmed the previous award of temporary custody to DCFS, and ordered DCFS to provide reunification services for the mother and children.

¶ 3 DCFS offered services over the next ten months, but the mother failed to sufficiently comply with the plan. DCFS then moved to terminate services and change the permanency goal to adoption. In response, the mother filed a motion to transfer custody of the children to appellants—her brother and sister-in-law, who then lived in Missouri. On August 25, 1997, the juvenile court terminated reunification services and changed the permanency goal to adoption. As for the mother's preference that the children be placed with appellants, the juvenile court indicated that DCFS would make that decision, and that family may receive some preference.

¶ 4 DCFS petitioned to terminate the mother's parental rights. On October 20, 1997, a pretrial hearing was held on that petition, and appellants, having just arrived from Missouri, expressed interest in adoption. The court indicated that because the permanency goal had already been changed to adoption, appellants would need to apply to be adoptive parents and have a kinship study for home placement completed.

¶ 5 On December 9, 1997, the juvenile court held a hearing to consider the mother's motion to transfer custody. Appellants, through counsel, claimed that they had filed a petition to adopt and asked the juvenile

court to place the children with them.[1] The juvenile court denied the mother's motion to transfer custody and continued the order of custody and guardianship in DCFS. The juvenile court then determined that appellants "have met the burden and shall receive preferential treatment with regard to adoption," but that they would also be "responsible for completing the process for being considered as an adoptive placement prior to [screening]." The court directed that the screening and recommendation for the children's placement occur before the trial on DCFS's termination petition.

¶ 6 At the trial on January 7, 1998, the juvenile court terminated the mother's parental rights. DCFS then recommended that the children be placed with another family, and appellants complained that they did not receive a preference. The juvenile court explained that a preference does not guarantee placement, but then stayed its order moving the children to their adoptive home for ten days to allow appellants, or any other interested party, to seek review or otherwise challenge the order.

¶ 7 The ten days passed, and nothing was filed with the court. On January 21, 1998, the Guardian Ad Litem (GAL) moved to place the children in their adoptive home. The juvenile court granted the motion and the children were placed two days later. The adoptive parents signed an adoption agreement on February 2, 1998.

¶ 8 Thereafter, DCFS proposed to remove the children from their adoptive home, reasoning that the children were moved prematurely and that the interests of the children would best be served in the relatives' home. In response, the GAL filed a Motion and Order for Request for Temporary Injunction and Request for Special Expedited Review Hearing, to block the proposed removal. The juvenile court granted the injunction and set the matter for an expedited hearing on February 12, 1998. At that hearing, the juvenile court found, based on the proffered testimony and evidence, that moving the children from their current adoptive placement would be contrary to their best interests.

¶ 9 Appellants then filed a motion seeking access to the children's juvenile court file. After a hearing on the motion, the juvenile court found that appellants were not parties to any of the proceedings before the mother's parental rights were terminated, but "may be considered a 'party' as a private petitioner for adoption." As such, the juvenile court allowed appellants access to all documents after the mother's parental rights were terminated. The juvenile court also ordered the State to "give [appellants] notice of any adoption petition being filed in this case."

¶ 10 Appellants later moved for relief from the order of the February 12, 1998 hearing on the grounds that (1) it was in the children's best interests to be placed with them, (2) they were not given notice of the February 12th hearing, and (3) the GAL had a conflict of interest because he had represented the biological father of one of the children at a hearing in which the father's parental rights were terminated.

¶ 11 On September 10, 1998, appellants received from the adoptive parents a redacted copy of a verified petition for adoption that had been filed on the adoptive parents' behalf. Various terms in the petition, including the filing date, had been blackened out. Appellants were not given any notice of where and when the final adoption hearing would take place. On September 16, 1998, appellants filed a motion for a temporary restraining order to stop the adoption. The juvenile court denied the motion as moot because the court had finalized the adoption at a hearing held on September 14, 1998.

¶ 12 Appellants thereafter sought relief from the final decree of adoption by moving to intervene as interested parties. Following a hearing, the juvenile court denied the motion to intervene, and all other previously filed and unadjudicated motions, finding: (1) it was not in the children's best interests to be removed from their adoptive home; (2) appellants had no legal basis to intervene or set aside the adoption; (3) appellants re-

---

1. Appellants' counsel later admitted, after the adoption was finalized, that appellants' petition for adoption and the filing fee had been returned to him by mail. Counsel failed to inform the juvenile court of the returned petition and made no further attempt to file.

ceived reasonable notice of all proceedings; and (4) appellants' due process rights were not violated. This appeal followed.

## ISSUE AND STANDARD OF REVIEW

¶ 13 We must determine whether the juvenile court afforded appellants procedural due process in their attempt to adopt the children. "Constitutional issues, including that of due process, are questions of law which we review for correctness." *In re K.M.*, 965 P.2d 576, 578 (Utah Ct.App.1998).

## ANALYSIS

### I. Due Process

¶ 14 Appellants first argue that their procedural due process rights were violated because they

were not provided notice of the proceedings, including, but not limited to, the filing of pleadings with the Court; notice of administrative and judicial hearings; the right to be present at hearings; the opportunity to be heard; and the right to present evidence relative to the best interest of the minor children.

¶ 15 Utah's adoption statute entitles certain persons to notice of adoption proceedings. *See* Utah Code Ann. § 78–30–4.13 (Supp.1999) (listing parties entitled to receive thirty days notice of adoption proceedings); *see also In re Adoption of A.B.*, 1999 UT App 315, ¶ 18, 991 P.2d 70. Moreover, "Utah's appellate courts have interpreted various provisions of Utah's adoption statute as entitling adoption petitioners a right to a full evidentiary hearing on their adoption petition." *In re Adoption of A.B.*, 991 P.2d 70, 1999 UT App 315 at ¶ 10. "Under Utah law, persons with a special relationship to a child have a right to a hearing on adoption or custody matters." *In re H.J.*, 1999 UT App 238, ¶ 32, 986 P.2d 115. In *H.J.*, this court stated that

although only parents have a *vested* right in the custody of a child, under some circumstances the "next of kin, such as [a] grandmother, do have some dormant or inchoate right or interest in the custody and welfare of children who become parentless, so that they may come forward

and assert their claim." This is a strong interest that should be seriously considered by the juvenile court, "at least to the extent of according ... a hearing and determination on the merits" of an adoption petition.

*Id.* (alteration in original) (quoting *Wilson v. Family Servs. Div., Region Two*, 554 P.2d 227, 231 (Utah 1976)). Thus, the "next of kin," or those with a special relationship, can assert their claim by filing an adoption petition.

¶ 16 The case at bar, however, presents a situation in which this court cannot determine from the record whether appellants actually filed an adoption petition. Appellants' prior counsel indicated to the juvenile court at a hearing on December 9, 1997, that they had filed an adoption petition. Thereafter, and based on that assertion, the juvenile court apparently treated appellants as private petitioners for adoption. However, appellants' prior counsel later indicated by way of affidavit that the petition was returned to him unfiled, along with the filing fee. Attached to the affidavit of appellants' prior counsel is a copy of appellants' petition, stamped by the court, indicating that it was filed on January 8, 1998, in the Third District Juvenile Court; however, the stamp has been crossed out.

¶ 17 It is entirely unclear how a petition, allegedly filed by counsel on November 28, 1997, could bear a date stamp of January 8, 1998, and why the stamp indicating that it was filed would be crossed out and the petition then returned to counsel along with the filing fee. This filing irregularity is further complicated by appellants' failure to bring it to the juvenile court's attention. Oral argument before this court did not shed any light on what happened to the petition as the parties only offered their guesses and theories. A determination of whether appellants filed an adoption petition will most likely only be ascertained from the testimony of those involved. Simply stated, the record before us does not resolve these critical questions and the juvenile court is in a far better position than we are to determine whether appellants had an adoption petition on file.

Therefore, we remand the case for that determination.

¶ 18 If the juvenile court determines that appellants did not assert their claim to the children by filing an adoption petition, then they were not entitled to notice and a hearing in the adoption proceeding. However, if the juvenile court determines that appellants did file an adoption petition, the proceedings below did not adequately afford them due process.

¶ 19 Appellants do not meet the statutory requirements of those entitled to notice of an adoption proceeding. *See* Utah Code Ann. § 78–30–4.13 (Supp.1999). However, "Utah's adoption statute does not address [multiple] adoption petitions." *In re Adoption of A.B.*, 991 P.2d 70, 1999 UT App 315 at ¶ 14. If appellants were truly private petitioners for adoption, they were parties to the adoption proceedings. As such, they were entitled to the fundamental due process requirement of "notice reasonably calculated, under all the circumstances, to apprise [them] of the pendency of the action and afford them an opportunity to present their objections." *Mullane v. Central Hanover Bank & Trust Co.*, 339 U.S. 306, 314, 70 S.Ct. 652, 657, 94 L.Ed. 865 (1950).

¶ 20 In this case, appellants were not given the time, place, or date of the final adoption hearing. Because they were not given notice of, and thus did not appear at, the final adoption hearing, appellants were also not afforded an opportunity to be heard. While the court may consolidate adoption petitions and determine that "one petition is the primary matter to be decided," *In re Adoption of A.B.*, 991 P.2d 70, 1999 UT App 315 at ¶ 14, notice must nevertheless be given to all those who have unadjudicated adoption petitions on file with the court in the matter, as they are also parties to the judicial proceeding. Therefore, if the juvenile court determines that appellants filed an adoption petition, they must be afforded their due process rights to notice and a hearing.

## II. Other Issues

¶ 21 Appellants also argue that the juvenile court erred in (1) not disqualifying the GAL for a conflict of interest, and (2) enjoining DCFS from removing the children from the chosen adoptive family to place them with appellants in February 1998. We have considered these issues and conclude they are without merit, regardless of the status of appellants' adoption petition. Accordingly, we decline to address them further. *See State v. Carter*, 776 P.2d 886, 888 (Utah 1989) (holding that appellate court "need not analyze and address in writing each and every argument, issue, or claim raised and properly before us on appeal"); *see also id.* at 889 (stating "it is a maxim of appellate review that the nature and extent of an opinion rendered by an appellate court is largely discretionary with that court"). *Cf. Reese v. Reese*, 1999 UT 75, ¶ 8, 984 P.2d 987 (holding that for purposes of certiorari review, court of appeals must "identif[y] the basis for refusing to treat an issue").

## CONCLUSION

¶ 22 We remand the issue of whether appellants filed an adoption petition with the juvenile court. If the court determines that appellants did not file an adoption petition, the decision of the juvenile court stands. However, if the juvenile court determines that appellants did file an adoption petition, they must be afforded notice and an opportunity to be heard in the adoption proceeding.

¶ 23 Accordingly, we remand for further proceedings consistent with this opinion.

Russell W. Bench, Judge

¶ 24 WE CONCUR: NORMAN H. JACKSON, Associate Presiding Judge, and JUDITH M. BILLINGS, Judge.