*This opinion is subject to revision before final publication in the Pacific Reporter*

**2013 UT 26**

IN THE

# SUPREME COURT OF THE STATE OF UTAH

STATE OF UTAH, in the interest of C.C. and K.H., persons under eighteen years of age.

S.C.,
*Appellant,*

*v.*

STATE OF UTAH,
*Appellee.*

No. 20120016
Filed: May 7, 2013

Fourth District Juvenile, Provo Dep't
The Honorable Suchada P. Bazzelle
No. 1037317

Attorneys:

Ronald D. Wilkinson, Orem, Sara Pfrommer, Park City,
for appellant

John Swallow, Att'y Gen., John M. Peterson, Asst. Att'y Gen.,
Salt Lake City, for appellee, State of Utah
Charisma V. Buck, Lehi, for appellee, Adoptive Parents
Martha M. Pierce, Salt Lake City for the Office of the
Guardian ad Litem

CHIEF JUSTICE DURRANT authored the opinion of the Court,
in which ASSOCIATE CHIEF JUSTICE NEHRING,
JUSTICE DURHAM, JUSTICE PARRISH, and JUSTICE LEE joined.

CHIEF JUSTICE DURRANT, opinion of the Court:

## INTRODUCTION

¶1    This case concerns competing petitions to adopt C.C., a five-year-old child. C.C. was removed from his home by the Division of Child and Family Services (DCFS). After the juvenile court terminated his mother's parental rights, it faced two com-

peting petitions to adopt him—one from his grandmother and the other from his foster parents. The court consolidated the competing petitions, granted procedural priority to the foster parents, and dismissed the grandmother's petition without first holding a hearing to consider the merits of her petition. We must decide whether the juvenile court properly handled these competing petitions.

¶2    We conclude that the juvenile court erred when it gave priority to the foster parents' petition and dismissed the grandmother's petition without considering its merits. In order to properly determine the best interests of children placed for adoption, courts must hold a hearing and consider the merits of each competing adoption petition.

## BACKGROUND

¶3    In 2010, at C.C.'s maternal grandmother's (Grandmother) request, DCFS removed C.C. from his home out of concern for his welfare. The juvenile court ruled that C.C.'s mother had neglected him and gave custody of C.C. to DCFS, which ultimately placed him in a foster home with his current adoptive parents (Foster Parents) on April 2, 2011.

¶4    DCFS initially sought to reunite C.C. with his mother. Grandmother supported the reunification process and did not initially seek custody of C.C. When C.C.'s mother failed to progress toward reunification, however, DCFS terminated its reunification services. DCFS set a new permanency goal of adoption for C.C., and, in May 2011, the State petitioned to terminate the parental rights of C.C.'s mother (Termination Case).

¶5    On June 7, 2011, Grandmother filed a petition, styled as a "Verified Petition for Relief" (Petition for Relief). The first heading in the Petition for Relief states that the petition is for "Custody or, in the Alternative, Grandparent's Visitation." The second heading states the petition is for "Adoption; or in the Alternative Custody or Guardianship; or in the Alternative Visitation." Grandmother filed her petition in the State's Termination Case pursuant to the Custody and Visitation for Persons Other Than Parents Act.[1]

¶6    Grandmother then attended several hearings in the Termination Case. At a contempt hearing for C.C.'s mother, the juve-

---

[1] UTAH CODE §§ 30-5a-101 to -104.

nile court suspended Grandmother's visitation rights because the visits had become confusing to C.C. Then, at the parental termination hearing, the juvenile court advised Grandmother that she must complete a background check and undergo a home study before the court would consider her as a placement for custody of C.C. The court told Grandmother that she was responsible for completing these requirements.

¶7 After filing her Petition for Relief, Grandmother initiated discovery against the Guardian ad Litem (GAL) and DCFS. DCFS disputed whether Grandmother was really a party to the State's Termination Case and asserted that she was not entitled to conduct discovery. The court told Grandmother to first file a motion to intervene, which Grandmother did on September 22, 2011 (Motion to Intervene). The juvenile court ultimately denied Grandmother's Motion to Intervene on December 2, 2011.

¶8 In the meantime, Grandmother appeared at a pretrial hearing for her Motion to Intervene and her Petition for Relief in November 2011. At this hearing, the juvenile court advised Grandmother that it would not treat her Petition for Relief as an adoption petition because it had not been filed properly. The court told her that she must "perfect" her petition by filing the appropriate documents and fees.

¶9 The court terminated C.C.'s mother's parental rights on September 1, 2011, although the court did not enter its formal order until November 30, 2011. Meanwhile, Foster Parents had filed an adoption petition on September 21, 2011. Given the uncertain status of Grandmother's Petition for Relief, Foster Parents also filed a "Motion to Clarify, Consolidate[, and] Give Priority" to their adoption petition over Grandmother's Petition for Relief (Motion to Prioritize). On December 7, 2011, the juvenile court notified Grandmother and Foster Parents that it would hold a joint hearing to consider Grandmother's Petition for Relief and Foster Parent's adoption petition. The court set the hearing for December 21, 2011. The court stated in its notice that it would consider arguments as to whether (1) "the [Foster Parents'] Petition for Adoption and [Grandmother's Petition for Relief] should be consolidated" and (2) "which petition should have procedural priority."

¶10 The day before the hearing, Grandmother perfected her Petition for Relief as an adoption petition by filing the documents and fees requested by the court, although she maintains that her

petition qualified as an adoption petition as of June 7 when she first filed it. At the hearing, the court received proffers of evidence and arguments on whether to consolidate and prioritize the competing adoption petitions. The court then issued an order granting priority to Foster Parents, stating that it would immediately move forward with a hearing on the merits of Foster Parents' petition and would consider Grandmother's Petition for Relief only if it declined to approve Foster Parents' adoption of C.C.

¶11 On December 23, 2011, the court granted Foster Parents' adoption petition and dismissed Grandmother's Petition for Relief. Grandmother maintains that she did not receive notice of Foster Parents' final adoption hearing until December 27, 2011—after the court had granted Foster Parents' petition. Grandmother appeals from the court's December 23 order granting Foster Parents' petition and dismissing her Petition for Relief. We have jurisdiction over this matter pursuant to section 78A-3-102(3)(b) of the Utah Code.

**ANALYSIS**

¶12 On appeal, Grandmother argues that the juvenile court erred in denying a hearing on the merits of her Petition for Relief, granting priority to Foster Parents' adoption petition, and denying her notice and an opportunity to appear at Foster Parents' adoption hearing. She also claims the court erred by denying her Motion to Intervene in the State's Termination Case. These claims present questions of statutory interpretation and also require us to determine whether the juvenile court applied correct legal standards, all of which are reviewed for correctness.[2] Finally, she argues that, if we remand the case, the juvenile judge should be disqualified. We review this claim for correctness.[3]

¶13 We first consider whether Grandmother preserved her claims for appeal. Based on an independent review of the record, we conclude that Grandmother preserved her claim that she was entitled to a hearing on the merits of her Petition for Relief. We

---

[2] *Chen v. Stewart*, 2004 UT 82, ¶ 19, 100 P.3d 1177; *State v. Lusk*, 2001 UT 102, ¶ 11, 37 P.3d 1103.

[3] *State v. Alonzo*, 973 P.2d 975, 979 (Utah 1998) ("Determining whether a trial judge committed error by failing to recuse himself or herself . . . is a question of law . . . .").

then consider the merits of that claim and whether the juvenile court erred in denying her Motion to Intervene in the State's Termination Case.

I. GRANDMOTHER PRESERVED HER CLAIM TO A HEARING ON THE MERITS OF HER PETITION FOR RELIEF AND, IN MAKING THAT CLAIM ON APPEAL, SHE MAY ARGUE THAT *IN RE ADOPTION OF A.B.* SHOULD BE OVERRULED; BUT SHE EITHER FAILED TO PRESERVE HER OTHER ARGUMENTS OR WE DECLINE TO REACH THEM

¶14  The State, GAL, and Foster Parents collectively argue that Grandmother failed to preserve the following claims: (A) that Grandmother was entitled to a hearing on the merits of her Petition for Relief; (B) that *In re Adoption of A.B.*[4] is bad law and should be overturned; (C) that Grandmother was entitled to notice and an opportunity to appear at Foster Parents' final adoption hearing; (D) that the juvenile court should have taken the initiative to order a home study and consideration of kinship placement; and (E) that the juvenile judge should be disqualified.

¶15  As an initial matter, Grandmother's opening brief does not comply with the Utah Rules of Appellate Procedure. Rule 24 provides that "[t]he brief of the appellant shall contain under appropriate headings . . . citation to the record showing that the issue was preserved in the trial court; or . . . a statement of grounds for seeking review of an issue not preserved in the trial court."[5] In her opening brief, Grandmother did not provide any citations to the record showing that she preserved her arguments. Further, she did not state any ground for seeking review of an unpreserved issue. We conclude, however, that Grandmother has provided sufficient citation to the record in her reply brief so as to satisfy her "burden of argument and research" on appeal.[6] We

---

[4] 1999 UT App 315, 991 P.2d 70.

[5] UTAH R. APP. P. 24(a).

[6] *See Water & Energy Sys. Tech., Inc. v. Keil*, 2002 UT 32, ¶ 21, 48 P.3d 888 ("[T]his court will not become simply a depository in which the appealing party may dump the burden of argument and research." (internal quotation marks omitted)); *see also Hoyer v. State*, 2009 UT 38, ¶ 21, 212 P.3d 547 (declining to strike portions of a party's brief for failing to cite to the record because the party

therefore exercise our discretion to overlook Grandmother's technical noncompliance with rule 24.[7]

¶16 "We will not address an issue if it is not preserved or if the appellant has not established other grounds for seeking review."[8] In determining whether an issue has been preserved, we have recognized the general rule that "the issue must be presented to the trial court in such a way that the trial court has an opportunity to rule on that issue."[9] To give the court this opportunity, "(1) the issue must be raised in a timely fashion; (2) the issue must be specifically raised; and (3) a party must introduce supporting evidence or relevant legal authority."[10]

¶17 "[W]e have recognized [only] three instances in which an appellate court may address an issue for the first time on appeal."[11] These include "(1) where the appellant establishes that the trial court committed 'plain error'; (2) where 'exceptional circumstances' exist; or (3) in some situations, where a claim of ineffective assistance of counsel is raised on appeal."[12] Further, we are "procedurally barred" from considering any of these three instances if the party fails to allege them in its opening brief.[13]

---

provided amendments that relieved the court of "the expense and time of performing the critical task of marshaling the evidence" (internal quotation marks omitted)).

[7] *See Martinez v. Media-Paymaster Plus/Church of Jesus Christ of Latter-day Saints*, 2007 UT 42, ¶¶ 19–20, 164 P.3d 384 (stating, in the context of a different provision of rule 24, that "[t]he reviewing court . . . retains discretion to consider independently the whole record").

[8] *H.U.F. v. W.P.W.*, 2009 UT 10, ¶ 25, 203 P.3d 943.

[9] *Pratt v. Nelson*, 2007 UT 41, ¶ 15, 164 P.3d 366 (internal quotation marks omitted).

[10] *Id.* (internal quotation marks omitted).

[11] *State v. Weaver*, 2005 UT 49, ¶ 18, 122 P.3d 566.

[12] *Id.*

[13] *Id.* ¶ 19.

¶18 Below, we apply the above principles to determine whether Grandmother preserved her claims.

*A. Grandmother Preserved Her Claim that She Was Entitled to a Hearing on the Merits of Her Petition for Relief*

¶19 After an independent review of the record, we conclude that Grandmother preserved her claim that she was entitled to a hearing on the merits of her Petition for Relief. At the December 21 hearing, Grandmother presented two arguments to the juvenile court in support of her claim to a hearing. First, she argued that due process entitled her to a hearing, stating that "[a]t no time has this Court set a hearing on [Grandmother's] petition. . . . [Grandmother] has never been given [the] opportunity to be heard." She argued further that "[d]ue process requires not just an opportunity to attend a Court hearing or two, but an opportunity to participate meaningfully in the process." Grandmother repeated this argument throughout the hearing.

¶20 Second, Grandmother argued that the "best interests of the child" standard required the juvenile court to conduct a hearing on the merits of her petition. She argued that, "[a]s the Court is weighing things, we believe that it's best interests that should control and, certainly, with that at stake, that this Court should give the opportunity to have a full evidentiary hearing to make that assessment." Grandmother also cited legal authority—the Juvenile Court Act—as authority to support her theory.

¶21 Finally, Grandmother gave the juvenile court an opportunity to rule on her claim that she was entitled to a hearing, and the court addressed her argument in its order. The court noted that Grandmother had "argued emphatically that her due process rights have not yet been met regarding her Petition for Relief." But the court then granted procedural preference to Foster Parents and concluded that it would grant a hearing to Grandmother only if it denied Foster Parents' petition. Because the juvenile court had an opportunity to rule on her claim—and in fact did rule—we conclude that Grandmother preserved her claim that she was entitled to a hearing on the merits of her Petition for Relief.

*B. Grandmother May Argue on Appeal that* In re Adoption of A.B. *is Contrary to the "Best Interests of the Child" Standard, Even Though She Did not Cite the Case in Her Arguments to the Juvenile Court*

¶22 While before the juvenile court, Grandmother argued that the best-interests standard entitles her to a hearing. She did not, however, specifically argue that *In re Adoption of A.B.* should be

overruled, as she does now on appeal. We conclude that Grandmother's argument concerning *In re Adoption of A.B.* can fairly be seen as simply part of her broader argument that the "best interests of the child" standard requires the juvenile court to give her a hearing on her petition. Accordingly, she did not need to specifically cite this case in order to argue on appeal that it should be overturned.

¶23  In *Torian v. Craig*, we considered an instance of a litigant raising new legal authority on appeal after having adequately preserved his theory below.[14] We held that a litigant did not have a duty to preserve specific legal authority. Specifically, we stated that "[a] litigant has no obligation to 'preserve' [her] citation to legal authority."[15] We noted that "[i]f the foundation of a claim or argument is presented in a manner that allows the district court to rule on it, a party challenging the lower court's resolution of that matter is free to marshal any legal authority that may be relevant to its consideration on appeal."[16]

¶24  In this case, the juvenile court relied on *In re Adoption of A.B.* to consolidate Grandmother's Petition for Relief and later dismiss the petition without a separate hearing. Grandmother now argues that *In re Adoption of A.B.* should be overruled because it is contrary to her theory that the "best interests of the child" standard requires the juvenile court to provide her a hearing on her petition. Because Grandmother preserved her broader argument that the best-interests standard entitles her to a hearing, she may argue on appeal that *In re Adoption of A.B.* should be overruled.

*C. Grandmother Preserved Her Claim that She Was Entitled to Notice and an Opportunity to Participate at Foster Parents' Adoption Hearing, but it is Unnecessary to Reach This Issue on Appeal*

¶25  Grandmother further argues that the juvenile court erred when it granted Foster Parents' adoption of C.C. without giving her notice and an opportunity to participate. The State contends that Grandmother did not preserve this due process claim and

_____

[14] 2012 UT 63, ¶¶ 18–19, 289 P.3d 479.

[15] *Id.* ¶ 20.

[16] *Id.*

notes that "[w]hile [she] might claim she was prevented from doing so by lack of notice, nothing prevented [her] from filing a post-judgment motion seeking to set aside the adoption based upon her alleged lack of notice." As to this latter point, we disagree. Our preservation rule "does not require a party to file a post-judgment motion before the trial court as a prerequisite to filing an appeal."[17] Further, we have recognized that "[t]he general preservation rule does not apply . . . when the alleged error first arises in the lower court's final order or judgment and thus, leaves no opportunity for the party to object below or to bring issues to the attention of the trial court."[18]

¶26 Although the preservation rule does not bar review of this issue, we decline to reach it given our resolution of this case on alternative grounds. Because we conclude that the juvenile court erred by dismissing Grandmother's Petition for Relief without a hearing on the merits, it is unnecessary to decide whether Grandmother should have received notice and an opportunity to participate at a hearing that now has no legal effect.[19]

### D. Grandmother Failed to Preserve Her Claim that DCFS Has an Ongoing Duty to Evaluate Relatives for C.C.'s Placement

¶27 Grandmother also argues that DCFS had an obligation to initiate and conduct her home study and background checks even after the 120-day preference period for relatives expired.[20] Specifically, she contends "[t]he Juvenile Court should have ordered DCFS to complete the home study by a date certain and then scheduled a full evidentiary hearing on *both* petitions for a date at which Grandmother could appear with all of the court-imposed prerequisites met." We conclude that Grandmother did not preserve this issue. Indeed, she did not specifically raise it below or give the juvenile court an opportunity to rule on it.

---

[17] *Sittner v. Schriever*, 2000 UT 45, ¶ 16, 2 P.3d 442.

[18] *State ex rel. D.B. v. State*, 2012 UT 65, ¶ 34, 289 P.3d 459 (internal quotation marks omitted).

[19] *See Gardner v. State*, 2010 UT 46, ¶ 93, 234 P.3d 1115 (noting "our obligation to avoid addressing constitutional issues unless required to do so" (internal quotation marks omitted)).

[20] *See* UTAH CODE § 78A-6-307(18).

¶28 Instead, the closest Grandmother came to making this argument below was at the December 21 hearing when she stated, "We have not received the DCFS home study, although we've made that request, and believe that it would be inappropriate to go forward without assessing [the] best interest[s of the child]." Grandmother made a number of complaints about DCFS at the hearing, but they all related to delay rather than a violation of DCFS's obligations to her. Further, Grandmother cited none of the legal authority she now provides on appeal. Finally, Grandmother has not argued that the court committed plain error or that exceptional circumstances exist that would permit us to consider this issue for the first time on appeal. Accordingly, we conclude that she failed to preserve this issue.

*E. Grandmother is Free to Comply with Rule 63(b) and Assert Her Claim of Judicial Bias Upon Remand*

¶29 Finally, Grandmother argues that, in the event that we remand this case, we should assign it to a different judge. But Grandmother did not present this claim to the juvenile court. Utah law is clear that "[a] party alleging judicial bias or prejudice must first file an affidavit to that effect in the trial court."[21] Grandmother does not dispute this rule. But she claims that she did not learn of the circumstances creating the bias until she received the record as part of her appeal, so she "could not raise an issue of bias" below.

¶30 We note, however, that Grandmother still has an opportunity to comply with this rule by filing an affidavit with the juvenile court upon remand. We have stated that "[t]o be timely, a motion to disqualify should be filed at counsel's first opportunity after learning of the disqualifying facts."[22] Because Grandmother did not discover the facts supporting her allegation of judicial bias until after filing her appeal, she could not have complied with the affidavit requirement while at the juvenile court. Accordingly, her first opportunity to do so would be on remand. We therefore decline to prematurely consider the merits of this claim.

---

[21] *Campbell, Maack & Sessions v. Debry*, 2001 UT App 397, ¶ 24, 38 P.3d 984; *see also* UTAH R. CIV. P. 63(b) (outlining process for disqualifying a judge).

[22] *Camco Constr., Inc. v. Utah Baseball Acad., Inc.*, 2010 UT 63, ¶ 17, 243 P.3d 1269 (internal quotation marks omitted).

## II. TO PROPERLY EVALUATE THE BEST INTERESTS OF A CHILD, COURTS MUST HOLD A HEARING ON THE MERITS OF COMPETING ADOPTION PETITIONS

¶31  In its December 22 order, the juvenile court granted procedural preference to Foster Parents and ordered an evidentiary hearing on their petition. The court stated that it would consider Grandmother's competing petition only if it denied Foster Parent's petition. Because the court later granted Foster Parents' petition, it dismissed Grandmother's competing petition without addressing its merits. Grandmother contends that this process of prioritizing one adoption petition over another is improper because it violates the Adoption Act's mandate that the best interests of the child should control.[23] She argues that "if more than one legitimately interested party wishes to adopt a child, it is impossible for the Juvenile Court to fully and fairly determine the *best* outcome without conducting a full evidentiary hearing on the respective merits of both." We agree.[24]

¶32  As an initial matter, the parties dispute the date on which Grandmother filed an adoption petition. Grandmother maintains that the Petition for Relief she filed on June 7, 2011, was an adoption petition. The juvenile court concluded, however, that Grandmother's Petition for Relief was not an adoption petition until December 20, 2011, when she perfected her filing. Ultimately, we need not decide whether Grandmother's Petition for Relief constituted an adoption petition when she first filed it. All the parties agree that Grandmother filed an adoption petition by December 20, 2011, before the juvenile court granted priority to Foster Parents. She thus timely filed a "competing" petition to adopt C.C. because, as of December 20, 2011, when Grandmother per-

---

[23] UTAH CODE § 78B-6-102(1).

[24] Grandmother also contends that the prioritization process violates her fundamental due process right as a grandparent "to have her petition considered and heard." Because we base our resolution of this issue on the best interests of the child, we need not reach Grandmother's alternative due process claim.

fected her Petition for Relief, C.C. was still available for adoption.[25]

¶33 The process by which a court should consider competing adoption petitions is a matter of first impression for this court. Further, the Utah Adoption Act is silent on the issue.[26] The court of appeals, however, has developed case law to guide lower courts facing this question. In *In re Adoption of A.B.*, the court of appeals considered competing petitions for the adoption of three children.[27] The adoptive parents, who were paternal cousins of the children, filed first and received a hearing.[28] On the day of their hearing, the children's maternal grandmother objected and filed her own petition.[29]

¶34 The court of appeals relied on rule 42 of the Utah Rules of Civil Procedure to consolidate the competing adoption petitions.[30] It then determined that "[i]n a consolidated adoption proceeding, the court may determine that one petition is the primary matter to be decided and hear that petition first. If that petition is granted, the adoption placement is concluded and there is no need to consider the second petition."[31] The court also noted, however, that "[a]n examination of the comparative merits of the competing pe-

---

[25] A petition filed after an adoption has already been finalized would not be a "competing" adoption petition for purposes of our analysis in this case because the child would no longer be available for adoption.

[26] *See, e.g., J.N. v. State (In re Adoption of J.N.)*, 2000 UT App 73, ¶ 19, 997 P.2d 345 (stating that "Utah's adoption statute does not address [multiple] adoption petitions" (alteration in original) (internal quotation marks omitted)).

[27] 1999 UT App 315, ¶ 2, 991 P.2d 70.

[28] *Id.* ¶ 6.

[29] *Id.* ¶ 7.

[30] *Id.* ¶ 14.

[31] *Id.* (footnote omitted) (citation omitted).

tition for adoption could fall appropriately within [the consolidation] proceeding, if warranted."[32]

¶35 The court in *In re Adoption of A.B.* found that the adoptive parents filed first and were more compliant with Utah's adoption statute.[33] It thus found it proper to prioritize and hear the adoptive parents' petition first.[34] The court noted that "[a]lthough the [lower] court . . . briefly addressed grandmother's petition to adopt, the court was under no further legal obligation to do so once it had granted the adoptive parents' petition."[35] After *In re Adoption of A.B.*, it was clear that courts could consolidate and prioritize competing adoption petitions. It also seemed clear that, after a court heard one petition, it had no duty to hear competing petitions.

¶36 In *In re Adoption of J.N.*, however, the court of appeals suggested otherwise. In that case, an aunt and uncle sought to set aside the adoption of their niece and nephew to nonrelatives.[36] They filed for a restraining order after they received notice of the adoptive parents' hearing with time, place, and date redacted.[37] Because it was unclear whether the aunt and uncle had filed a competing adoption petition, the court of appeals remanded the case to the juvenile court to determine whether appellants had actually filed a petition.[38] But the court noted that "[w]hile the court may consolidate adoption petitions and determine that one petition is the primary matter to be decided, notice must nevertheless be given to all those who have unadjudicated adoption petitions on file with the court in the matter, as they are also parties to the

---

[32] *Id.* ¶ 14 n.4.

[33] *Id.* ¶ 15.

[34] *Id.*

[35] *Id.*

[36] 2000 UT App 73, ¶ 1.

[37] *Id.* ¶ 11.

[38] *Id.* ¶ 18.

judicial proceeding."[39] It then directed that "if the juvenile court determines that appellants filed an adoption petition, they must be afforded their due process rights to notice and a hearing."[40]

¶37  In light of these opinions, it is unclear what duty, if any, a court has to a party who files a competing adoption petition. We now take the opportunity to clarify the law on this important issue. We recognize at the outset that, although the Adoption Act is silent on the issue of competing petitions, it nevertheless offers guiding principles that direct our decision of this issue. Foremost of these principles is that we must hold the child's best interests paramount: "[i]t is the intent and desire of the Legislature that in every adoption the best interest of the child should govern and be of foremost concern in the court's determination."[41]

¶38  Further, the Adoption Act directs that "the rights and interests of all parties affected by an adoption proceeding must be considered and balanced in determining what constitutional protections and processes are necessary and appropriate."[42] Finally, the Adoption Act states that "the state has a compelling interest in providing stable and permanent homes for adoptive children in a prompt manner, [and] in preventing the disruption of adoptive placements."[43]

¶39  Based on these principles, we conclude that courts must conduct a hearing on the merits of competing adoption petitions. The prioritization process established by the court of appeals, and followed here by the juvenile court, allows for prioritization of one adoption petition over another on grounds potentially unrelated to the best interests of the child. This process is therefore inconsistent with the legislative directives in the Adoption Act.

---

[39] *Id.* ¶ 20 (citation omitted) (internal quotation marks omitted).

[40] *Id.*

[41] UTAH CODE § 78B-6-102(1).

[42] *Id.* § 78B-6-102(3).

[43] *Id.* § 78B-6-102(5)(a).

¶40 In the case now before us, the juvenile court justified its decision to prioritize Foster Parents' petition over Grandmother's first on the ground that Grandmother did not file the documents and fees requested by the court to perfect her petition as an adoption petition until after Foster Parents had filed their adoption petition. Second, the court determined that Foster Parents' petition was more compliant with the Adoption Act because Grandmother had failed to complete her pre-placement study and background check. The court recognized that C.C. had lived with Foster Parents for more than six months, thus qualifying Foster Parents for entry of a final adoption decree[44] and for a statutory preference as foster parents.[45] Finally, the court noted that Grandmother initially supported her daughter's reunification with C.C. instead of immediately seeking adoption, did not file her Petition for Relief until nearly a year after C.C. was placed with DCFS, and did not move for custody of C.C. during the 120-day kinship preference period.[46]

¶41 All of the court's stated reasons for prioritizing Foster Parents' petition may, in fact, be true. But it could nevertheless be true that it is in C.C.'s best interest to be adopted by Grandmother instead of Foster Parents. Questions of which party filed its petition first or which party is more compliant with the Adoption Act, for example, do not necessarily relate to a child's best interests. And while statutory preferences provide important guidance, they do not conclusively control what is ultimately in a child's best interests. Accordingly, in order to ensure that courts properly analyze a child's best interests when faced with multiple adoption

---

[44] *See id.* § 78B-6-136.5(1) (stating that "a final decree of adoption may not be entered until . . . the child has lived in the home of the prospective adoptive parent for six months").

[45] *See id.* § 78B-6-132(1) (stating that "the court shall give special consideration to the relationship of the child with his foster parents, if the child has been in that home for a period of six months or longer").

[46] *See id.* § 78A-6-307(18)(a) ("Any preferential consideration that a relative . . . is initially granted . . . expires 120 days from the date of the shelter hearing.").

petitions, we conclude that competing petitioners are each entitled to a hearing on the merits of their petitions.[47]

¶42 Requiring courts to conduct a hearing on the merits for competing adoption petitions better balances "the rights and interests of all parties affected by an adoption proceeding."[48] The court of appeals' prioritization process allows courts to prioritize and grant one petition without considering the merits of the second petition. This process allows parties' important interests to potentially go unassessed. But the Adoption Act, with its direction to consider "the rights and interests of all parties,"[49] contemplates a more balanced and thorough approach. Such an approach requires a hearing on the merits for competing adoption petitions.

¶43 Finally, we are mindful of the State's compelling interest "in providing stable and permanent homes for adoptive children in a prompt manner [and] in preventing the disruption of adoptive placements."[50] We recognize that prioritizing one petition over another could promote this interest by allowing courts to focus on the petition that—at a given point in the litigation—is more timely and more compliant with the Adoption Act. We therefore stress that our opinion today does not prevent courts from mov-

---

[47] We are not the first court to conclude that a child's best interests should control a court's decision between competing adoption petitions. In *In re Adoption of Redcrow*, a district court in Montana was faced with competing petitions for adoption. 563 P.2d 1121, 1122 (Mont. 1977). It delayed determination of one petition until the other petitioner could clear up defects in its petition. *Id.* at 1123. The district court eventually granted the second petition, and the first petitioner claimed on appeal that the district court abused its discretion by delaying determination of its petition. *Id.* The Montana Supreme Court affirmed. Specifically, it held that "[t]he paramount consideration in deciding between . . . competing parties is what is in the best interests of the child." *Id.* It noted that it "cannot be forced to don blinders to other aspects of the case on the theory that the early bird should catch the worm." *Id.*

[48] UTAH CODE § 78B-6-102(3).

[49] *Id.*

[50] *Id.* § 78B-6-102(5)(a).

ing forward with an adoption petition that is timely, compliant with the law, and appears to be in the best interests of the child. We simply conclude that it is in the best interests of children placed for adoption to give competing petitioners a chance to assert their interests.

¶44  To this end, courts are free to consolidate adoption petitions pursuant to rule 42 of the Utah Rules of Civil Procedure[51] and hold a joint evidentiary hearing to consider the relative merits of competing petitions. Or, in their discretion, courts may instead decide to consider the petitions separately when, for example, privacy is a concern. Further, timeliness is still a relevant factor in a court's decision to grant one petition over another. A court may take note, for example, of a competing petition's level of statutory compliance and its timeliness relative to the first petition's stage of advancement toward an ultimate award of adoption. But the court's decision to grant one petition over another must also rest on the relative merits of the competing petitions as they relate to the best interests of the child. Such a decision can only be made after conducting a hearing on the merits for each competing petition. Accordingly, we conclude that the juvenile court erred in prioritizing Foster Parent's adoption petition and dismissing Grandmother's petition without first holding a hearing on its merits.[52]

---

[51] This rule provides that "[w]hen actions involving a common question of law or fact are pending before the court, it may order a joint hearing or trial of any or all the matters in issue in the actions."

[52] Grandmother also argues that the juvenile court violated the Utah Rules of Civil Procedure by holding the consolidation hearing on December 21, 2011, which was fifteen days after the Foster Parents filed and mailed their Motion to Clarify, Consolidate and Prioritize Petitions. She contends that this time period did not allow for the required response time under rule 7 and that the court's violation warrants reversal. Because we now decide to overrule the court of appeals' decisions relating to prioritization, we do not reach this issue.

## III. BECAUSE THE JUVENILE COURT DID NOT STATE THAT ITS ORDER DENYING GRANDMOTHER'S MOTION TO INTERVENE WAS FINAL FOR PURPOSES OF APPEAL, WE DO NOT HAVE JURISDICTION TO CONSIDER IT

¶45 Grandmother argues that the juvenile court erred by denying her Motion to Intervene in the State's Termination Case. GAL responds that Grandmother failed to timely appeal the juvenile court's order denying Grandmother's Motion to Intervene. Specifically, the court issued its order denying Grandmother's Motion to Intervene on December 2, 2011, but Grandmother did not file her notice of appeal until January 6, 2012, more than thirty days later.[53] Grandmother responds that "an order is not final unless it specifies that it is a final order" and that the "December 2 order contains no such language." Accordingly, Grandmother asserts that, because the court's December 2 order does not state that it is final for purposes of appeal, her appeal rights have not been cut off.[54] We agree.

¶46 But as we recently held in *Central Utah Water Conservancy District v. King*, the court's failure to include this language deprives us of jurisdiction to hear the appeal until the court directs that no additional order is necessary or a party prepares an order consistent with the court's decision.[55] We therefore lack jurisdiction to consider this claim and dismiss it without prejudice.

### CONCLUSION

¶47 We conclude that the juvenile court erred when it prioritized Foster Parents' adoption petition and dismissed Grandmother's competing petition without first holding a hearing on its merits. In order to properly determine the best interests of children placed for adoption, courts must hold a hearing and consider the merits of competing petitions. We therefore reverse and re-

---

[53] *See* UTAH R. APP. P. 4(a) ("In a case in which an appeal is permitted as a matter of right . . . , the notice of appeal . . . shall be filed with the clerk of the trial court within 30 days after the date of entry of the judgment or order appealed from.").

[54] *See Giusti v. Sterling Wentworth Corp.*, 2009 UT 2, ¶ 35, 201 P.3d 966.

[55] 2013 UT 13, ¶¶ 15, 25, __ P.3d __.

mand this case to the juvenile court for a hearing consistent with this opinion.

————————