2012 UT 63

**Doug TORIAN, directly and derivatively on behalf of EnvironMax, Inc., a Utah corporation, Plaintiff and Appellant,**

v.

**Robert CRAIG, Genowefa Craig, Charles Meredith, individuals, EnvironMax, Inc., and Does 1–20, whose true identities are not known, Defendants and Appellees.**

**No. 20100919.**

Supreme Court of Utah.

Sept. 28, 2012.

---

Victor A. Sipos, South Jordan, for appellant.

John W. Mackay, Salt Lake City, for appellees.

Justice LEE, opinion of the Court:

¶ 1 Doug Torian brought suit against his former employer (EnvironMax) and its directors to recover the value of shares he received to offset wages owed to him by the company—shares he claimed were diluted by corporate misdeeds. The district court dismissed Torian's suit on summary judgment, concluding that the claim was derivative in nature and that Torian lacked standing to assert it directly. In so ruling, the court concluded that EvironMax was not a "closely held corporation" subject to an exception to the general rule requiring shareholder suits to be filed derivatively and that Torian's direct claims were otherwise foreclosed by his failure to utilize the Utah dissenters' rights statute.

¶ 2 We reverse. Because Torian's alleged injury is an individual and not a collective one in common with all shareholders, we conclude that he is entitled to sue individually and not required to pursue his claim derivatively. We also hold that the dissenters' rights statute does not preempt direct actions rooted in breach of fiduciary duty, such as the one brought by Torian. For these reasons, we reverse and remand for further proceedings on Torian's claim.

## I

¶ 3 Husband and wife Robert and Genowefa Craig founded EnvironMax in 2000.[1]

The company was a licensee that commercially marketed software developed by Robert's company, EnMax, to track hazardous materials. Doug Torian began his employment at EnvironMax as a sales manager. He also served on the company's board of directors.

¶ 4 Business was brisk for EnvironMax in the beginning. But by December 2004 the company was hit hard when the "dot-com bubble" burst. It ended up owing a total debt of $1.25 million to three employees (whose salaries sometimes went unpaid during the bust and who were offered equity in the company as an offset) and EnMax. Specifically, EnvironMax owed some $380,000 to Torian and $396,000 to EnMax.

¶ 5 In April 2005, Torian became a minority shareholder of the company at a time when it had approximately 15 million shares owned by 60 shareholders. By May, EnvironMax's board of directors decided to issue 600,000 new common shares to satisfy the debt owed its employees—with 200,000 of those shares going to Torian—and to issue six million preferred shares to EnMax for the same purpose. Enmax's preferred shares were later converted to common shares.[2]

¶ 6 Thus, although EnvironMax's debts to Torian and EnMax were approximately equal, EnvironMax issued thirty times more shares to EnMax than it did to Torian. According to Torian, the shares issued to him would have to have been valued at approximately $1.90 each in order to satisfy his debt. But due to the simultaneous issuance of six million shares to EnMax (at a value of $0.07 per share relative to the debt owed by EnvironMax), the share pool was sharply diluted, resulting in an overall actual value of only about $0.19 per share.[3] Torian ultimately

---

1. Our account of the facts in reviewing a summary judgment takes the record "in the light most favorable to the nonmoving party." *Giusti v. Sterling Wentworth Corp.*, 2009 UT 2, ¶ 6, 201 P.3d 966. The statement here takes that tack.

2. Torian also alleges that on other occasions, EnvironMax issued "no less than" 200,000

shares to "at least thirteen" family members of the Craigs. At about the same time, EnvironMax issued approximately 3.3 million additional shares to the appellees and to Enmax.

3. Torian submitted the following table as a breakdown of debt, shares, and share valuation:

| Creditor | Debt | Percent of Total Debt | Shares Number | Percent of Shares | Value/Share |
|---|---|---|---|---|---|
| Torian | $380,000 | 30.4% | 200,000 | 3.0% | $1.90 |

refused to accept the shares as compensation for his reduced salary.

¶ 7 Torian was removed from the EnvironMax board of directors in early 2005, and in early 2006 his employment with EnvironMax ended. In June 2006, he filed a lawsuit in federal court in New York for back wages and damages. Over a year later in July 2007, the parties agreed to arbitrate "any" dispute between them in a Utah forum, wherein Torian expressed concerns with valuation, dilution, and fiduciary duty issues arising from EnvironMax's issuance of shares in April 2005.[4]

¶ 8 Meanwhile in September 2007, another company, IHS Inc., entered a cash-out merger agreement to acquire all 25,211,660 shares of EnvironMax at $.80 per share.[5] Some weeks later, in November, Torian cashed out his shares for approximately $322,000. In doing so, he specifically declined to dispute the merger or the valuation of his shares under the dissenting shareholder statute— Utah Code sections 16–10a–1301 to –1331— citing purportedly unfavorable standards in dissenting shareholder cases in Utah as his reason for doing so.[6]

¶ 9 Torian ultimately prevailed in the arbitration and was awarded approximately $386,000 in back wages; this amount was offset, however, by the value of Torian's already liquidated shares. Following the arbitration, the parties entered into settlement discussions on other postlitigation matters, including the issue of interest. At the end of the day, Torian netted a total of $292,500— an amount that includes both the arbitration award and the subsequent settlement amount.[7]

¶ 10 This case ensued. On February 25, 2009, Torian filed a Verified Complaint alleging direct and derivative claims against the appellees, former directors, officers, and controlling shareholders of EnvironMax. Torian alleged, among other things, that the appellees "engaged in various self-dealing transactions to benefit themselves at the expense of certain minority shareholders and that he only discovered the wrongful acts after he and other minority shareholders parted with their shares." He later filed an Amended Complaint further asserting class-action claims under rule 23 of the Utah Rules of Civil Procedure.

¶ 11 In March 2010, the named defendants (collectively referred to as "the Craigs") filed a Motion for Summary Judgment, insisting that Torian's claims were, at best, derivative. The district court ultimately granted the Craigs' motion, ruling that the claims alleged by Torian "belong to the corporation" and noting that "shareholders generally cannot sue directly for those injuries." In reaching this conclusion, the court determined that no exceptions applied to Torian, hanging its hat on a purportedly "dispositive issue"—that "EnvironMax was not a closely held corporation" and "therefore, the closely held corporation exception does not apply." The court also ruled that Torian was foreclosed from

| | | | | | |
|---|---|---|---|---|---|
| [Doe 1] | $230,000 | 18.4% | 150,000 | 2.3% | $1.53 |
| [Doe 2] | $244,000 | 19.5% | 250,000 | 3.8% | $0.98 |
| Enmax | $396,000 | 31.7% | 6 mil | 90.9% | $0.07 |
| **Total** | **$1.25 mil** | **100.0%** | **6.6 mil** | **100.0%** | **$0.19** |

4. Torian alleges that this arbitration covered only some of the parties' claims, and that his personal damages and devaluation claims were not a part of the arbitration. The Craigs insist, however, that Torian brought all claims and that Torian's stock concerns—including value and damages to Torian personally—were "central issues" in the arbitration. This point of contention is not before us, however, as it was not considered by the district court, and we accordingly decline to address it. *See infra* ¶ 9 n. 7.

5. The parties do not dispute that this was a fair valuation of EnvironMax.

6. In arbitration, Torian conceded that "[t]he first act that might be construed as acceptance by Torian occurred in November 9, 2007 when he [cashed out] the shares. . . ."

7. In crafting the settlement, the Craigs "demanded an integrated settlement agreement—including a warranty of no 'other agreements not expressly contained herein.' " The question whether this provision foreclosed Torian's claims in this case is not before us, however, since the district court expressly declined to reach it.

bringing direct claims against EnvironMax because he failed to assert his rights under Utah's dissenters' rights statute. In the court's view, Torian "knew of his dissenters' rights and chose not to act upon his rights under the statute." "To permit him to do so [later]," in the district court's view, "would nullify the statute."

¶ 12 Because it granted the Craigs' motion for summary judgment on those issues, the court concluded that the question whether Torian could file a Second Amended Complaint or certify or maintain his proposed class was moot. Torian appealed.

■ ¶ 13 We review the district court's grant of summary judgment for correctness. *Stern v. Metro. Water Dist.*, 2012 UT 16, ¶ 20, 274 P.3d 935. Summary judgment is appropriate only where there are no genuine issues of material fact and the moving party is entitled to judgment as a matter of law. UTAH R. CIV. P. 56(c). We accord no deference to the district court's conclusions of law, including its interpretation of precedent and statute as applied to Torian. *See Grappendorf v. Pleasant Grove City*, 2007 UT 84, ¶ 5, 173 P.3d 166. For the reasons below, we reverse and remand.

## II

¶ 14 In its grant of summary judgment, the district court made two conclusions that in its view foreclosed Torian's claim: (A) because Torian's claims were derivative in nature and because Torian could not satisfy the closely-held-corporation exception—an exception recognized in the caselaw permitting him to sue directly for derivative injury to the corporation—Torian was not permitted to sue directly to vindicate the injury he alleged, and (B) Torian could not assert a direct claim as a former shareholder because he failed to follow the terms of Utah's dissenters' rights statute. Torian challenges that decision on the ground that he is not required to proceed derivatively and is entitled to sue individually to vindicate a cognizable, individualized injury.

¶ 15 We agree with Torian. We hold that the district court erred in concluding that the closely-held-corporation exception was the sole ground for Torian to bring his claims directly and that the dissenters' rights statute also foreclosed Torian's direct recovery.

## A

■ ¶ 16 We have long acknowledged the right of shareholders to sue individually to remedy individual injuries.[8] To qualify to sue on these grounds, a "shareholder need show only an injury to him- or herself that is distinct from that suffered by the corporation." *Aurora Credit Servs., Inc. v. Liberty W. Dev., Inc.*, 970 P.2d 1273, 1280 (Utah 1998).

¶ 17 Torian has asserted a claim on such an individual injury. In his amended complaint, Torian alleged that "more than 10 million shares were issued after [he] became a shareholder" and that of those shares, "more than 9.7 million shares went to [the appellees] and their family members." Torian further claimed that the devaluation of his shares by the majority shareholder appellees "harmed the interests of EnvironMax *and* its minority shareholders, including Mr. Torian."

¶ 18 The Craigs' principal response to Torian's individual injury theory is to challenge it as unpreserved and thus not properly before us on appeal. While conceding that Torian adverted generally to the individual injury theory in the district court, the Craigs nonetheless contend that Torian failed to sufficiently elaborate on the theory's application in this case and, most pointedly, that he failed to cite the individual injury standards he relies on in his briefs on appeal. Specifically, the Craigs challenge as unpreserved Torian's citation to standards set forth in authorities such as *Gentile v. Rossette*, 906 A.2d 91 (Del.2006), and Fletcher, *Cyclopedia of the Law of Private Corporations*, which Torian cites to us in support of the view that his claims are individual and thus not necessarily derivative.

---

**8.** *See, e.g., Dansie v. City of Herriman*, 2006 UT 23, ¶ 10, 134 P.3d 1139; *Arndt v. First Interstate Bank of Utah, N.A.*, 1999 UT 91, ¶ 16, 991 P.2d 584; *Aurora Credit Servs., Inc. v. Liberty W. Dev., Inc.*, 970 P.2d 1273, 1280–81 (Utah 1998); *Richardson v. Ariz. Fuels Corp.*, 614 P.2d 636, 638 (Utah 1980).

¶ 19 We see no preservation problem here, and thus no barrier to our consideration of the standards set forth in *Gentile* and Fletcher. Despite the Craigs' insistence to the contrary, this is not a circumstance in which the appellant has asked us to consider on appeal claims or theories of "first impression" that were never presented for decision below. Torian asserted an individual injury claim in the district court and invoked the individual injury theory when the Craigs challenged his right to press his claim directly. Torian admittedly did not cite *Gentile* or Fletcher in the district court or invoke the specific standards set forth in those authorities, but he had no obligation to do so.[9]

¶ 20 A litigant has no obligation to "preserve" his citation to legal authority. If the foundation of a claim or argument is presented in a manner that allows the district court to rule on it, a party challenging the lower court's resolution of that matter is free to marshal any legal authority that may be relevant to its consideration on appeal.[10] That is all that Torian has sought to do here. He preserved the argument that his injuries were individual and thus not required to be asserted derivatively, and it is open to him on appeal to cite new authority to support or explain his view.

¶ 21 In opposing the Craigs' motion for summary judgment at oral argument in the district court, Torian elaborated on his individual injury theory in this case. He cited two Utah cases [11] for the proposition that, to qualify to sue on an individual injury, "[t]he shareholder must examine his injury in relation to the corporation and demonstrate that the injury was visited upon him and not the corporation." And under these cases, Torian asserted that his minority shares "had been diluted by unlawful actions" and that "the corporation, EnvironMax, ha[d] no further injury." That was sufficient to preserve the individual injury question before us presented on appeal. Torian set forth the argument and presented the district court with sufficient grounds for evaluating it.

¶ 22 Because the individual injury issue was properly preserved, Torian is free to present additional authority to support and explain it on appeal. And that is all he has done in citing *Gentile* and Fletcher before us. Those authorities simply put additional meat on the bones of the argument Torian presented in the district court, which was rooted in our case law identifying circumstances where an individual injury may be pressed in a direct cause of action—e.g., in cases involving an individual contract, or a right that belongs to the plaintiff severally, or a fraud affecting him directly. *See Richardson v. Ariz. Fuels Corp.*, 614 P.2d 636, 639 (Utah 1980).

¶ 23 These are examples of individual injuries, not an exhaustive list. Torian is accordingly free to cite authority elaborating on this theory further and illustrating its application to this case. And that is what *Gentile* and Fletcher do. We find these authorities in line with our individual injury cases and thus appropriate for our consideration despite not having been cited below.

¶ 24 *Gentile* helpfully conceptualizes the circumstances in which a shareholder's claim may be distinct from the corporation's claim. It identifies the following considerations as key to this inquiry: "(1) who suffered the alleged harm (the corporation or

9. This is not to say that litigants have no obligation to cite legal authority in support of their positions. They certainly do. Our point is just that a litigant who has provided legal authority to support a claim or argument in the district court is not limited to the universe of authorities cited in the district court, but may cite additional authority in support of the same proposition on appeal.

10. *Compare State v. Prion*, 2012 UT 15, ¶ 19, 274 P.3d 919 ("Preservation rules ... enhance efficiency and fairness and generally assure that most claims are raised and resolved in the first instance by the original trial court.... [M]ost claims are barred if they are not presented in time to be resolved in the initial proceedings in the district court."), *and 438 Main St. v. Easy Heat, Inc.*, 2004 UT 72, ¶ 51, 99 P.3d 801 (noting that proper preservation of issues "puts the trial judge on notice of the asserted error and allows for correction at that time in the course of the proceeding"), *with Patterson v. Patterson*, 2011 UT 68, ¶ 18, 266 P.3d 828 ("[W]e routinely consider new authority relevant to issues that have properly been preserved.").

11. *Dansie*, 2006 UT 23, 134 P.3d 1139, and *Richardson*, 614 P.2d 636.

the suing stockholders individually); and (2) who would receive the benefit of the recovery or other remedy (the corporation or the stockholders, individually)?" 906 A.2d at 97 (internal quotation marks omitted).[12] We find these considerations instructive and in line with our prior case law in this area. The *Gentile* formulation is especially helpful in the circumstances of this case, as it is addressed specifically to the kind of valuation, dilution, and fiduciary duty allegations presented here.

¶ 25 In reviewing the dilution case before it, the *Gentile* court observed that "[t]here is ... at least one transactional paradigm—a species of corporate overpayment claim—that ... [is] both derivative and direct in character," *id.* at 99, arising where

> (1) a stockholder having majority or effective control causes the corporation to issue "excessive" shares of its stock in exchange for assets of the controlling stockholder that have a lesser value; and (2) the exchange causes an increase in the percentage of the outstanding shares owned by the controlling stockholder, and a corresponding decrease in the share percentage owned by the public (minority) shareholders.

*Id.* at 100. Transactions undertaken within this paradigm, the *Gentile* court explained, result in a separate injury to the minority shareholders—arising out of "an extraction from the [minority] shareholders, and a redistribution to the controlling shareholder, of a portion of the economic value and voting power embodied in the minority interest."

*Id.* And, "[a]s a consequence, the [minority] shareholders are harmed, uniquely and individually, to the same extent that the controlling shareholder is (correspondingly) benefited." *Id.*

¶ 26 We find this paradigm helpful and accordingly adopt it. We also conclude that the allegations in Torian's complaint allege just such a transaction. In his Amended Complaint, Torian asserted that:

> Some of Defendants' actions may have harmed the minority shareholders without harming the corporation itself. In other words, Defendants unfairly allocated to themselves and their family members excessive ownership interest in EnvironMax, which had the result of unfairly diminishing the value of the shares owned by minority shareholders.

Torian complains of harm to his shares that is not apportioned in common with all shareholders.[13] Therefore, his claim is direct rather than derivative. Such a claim may be asserted by Torian individually, and the district court erred in ruling otherwise.

¶ 27 The dilution Torian complains of is not the result of an equal dilution of economic value and voting power of the corporation's shares generally. Rather, Torian has alleged a particularized or distinct injury—that he was harmed "uniquely and individually, to the same extent that the controlling shareholder is (correspondingly) benefited." *Id.* We therefore hold that, "[i]n such circumstances, the [minority] shareholders [may pursue claims] directly and without regard to any claim the corporation may have." *Id.*[14]

---

**12.** Our *Dansie* and *Arndt* opinions fall in line with this standard, as the entity at issue in those cases had suffered the harm and was thus entitled to the benefit of the claim. *See Dansie,* 2006 UT 23, ¶ 31, 134 P.3d 1139; *Arndt,* 1999 UT 91, ¶ 22, 991 P.2d 584.

**13.** In fact, in arguing against the Craigs' motion for summary judgment, Torian's counsel explained that only individual injury—not derivative injury to EnvironMax—was alleged. *See* Transcript of Oral Argument at 62–63 (arguing that "the concept of a derivative action [was] meaningless" in this case because EnvironMax "was not injured" and further arguing that the "injured parties" were actually Torian and the other "former EnvironMax shareholders who [had] sold their diluted shares for less than they

should have gotten"). Torian's appellate brief incorporates portions of this same exchange in the trial court. Therefore, in light of Torian's concession that the only injury alleged is individual, we do not reach the issue of whether the district court erred in concluding that the closely-held-corporation exception was inapplicable in this case. That theory would allow a direct suit on a claim for a derivative injury. We need not address that more general theory in light of our narrow decision upholding Torian's right to proceed directly on an individual injury.

**14.** *See also* 12B William Meade Fletcher et al., Fletcher Cyclopedia of the Law of Corporations § 5911 ("The action is derivative if the gravamen of the complaint is injury to the corporation, or to the whole body of its stock or property without

We accordingly reverse the district court's grant of summary judgment to the extent it rested on a contrary conclusion.[15]

### B

¶ 28 We also hold that the district court erred in concluding that Torian's claims were barred by the dissenters' rights statute, Utah Code sections 16–10a–1301 to –1331. On this point, Torian contends that his claim falls outside the statute because the statute allows litigants to raise separate claims related to corporate actions that are "unlawful or fraudulent with respect to [a shareholder] or to the corporation." UTAH CODE § 16–10a–1302(5). The Craigs maintain, however, that the statute is the exclusive remedy when a shareholder's claim is that a breach of fiduciary duty has the primary effect of diminishing share value.

¶ 29 The Craigs draw this conclusion without quoting any provisions of the statute, relying instead on the Utah Court of Appeals decision in *Bingham Consolidation Co. v. Groesbeck*, 2004 UT App 434, 105 P.3d 365. We disagree with the Craigs' analysis and also with their reading of *Bingham Consolidation*.

¶ 30 The dissenters' rights statute entitles a shareholder "to dissent from, and obtain payment of the fair value of shares held by him" in a number of circumstances, including merger, exchange and acquisition, and "any other corporate action" authorized by the entity's articles of incorporation, bylaws, or

resolution. UTAH CODE § 16–10a–1302. The statute thereafter provides the mechanism by which the shareholder may dissent to the proposed action and obtain his payment of fair value. *Id.* §§ 16–10a–1302 to –1331.

¶ 31 But the mechanism for the dissent and payment is an obligation imposed on the *corporation* to provide notice to shareholders whenever a corporate action is proposed that triggers dissenters' rights, *id.* §§ 16–10a–1320, –1322, with a corresponding right held by the shareholder to submit a written payment demand in *response, id.* § 16–10a–1328. In the event that a shareholder's demand for payment goes unresolved, the statute provides for a judicial remedy, but the proceeding is to be initiated *by the corporation*, with all dissenting shareholders attached as parties. *Id.* § 16–10a–1330.[16] In short, all actions under the dissenters' rights statute are commenced by the corporation.

¶ 32 Thus, we find nothing in these statutory provisions that would deem the *corporation's* cause of action to be preclusive of a minority shareholder's right to sue. Indeed, the statute expressly preserves the right of a shareholder to "challenge the corporate action creating the entitlement" to dissent and obtain payment in the event that "the action is unlawful or fraudulent with respect to [a shareholder] or to the corporation." *Id.* § 16–10a–1302(5). For these reasons, we do not read the statute as field-preemptive as to dissenting shareholders.

any severance or distribution among individual shareholders, or if it seeks to recover assets for the corporation or to prevent the dissipation of its assets." (footnotes omitted)).

15. In so ruling, we need not and do not necessarily disagree with the alternative direct action limitations pressed by the Craigs in their brief. The Craigs cite *Aurora Credit*, 970 P.2d at 1280, for the proposition that "a direct action may be appropriate *only if* the deciding court determines that allowance of the direct action will not: (i) unfairly expose the corporation or defendants to a multiplicity of action, (ii) materially prejudice the interests of creditors of the corporation, or (iii) interfere with a fair distribution of the recovery among all interested persons." These standards, however, are implicated only where "minority shareholders of a *closely held corporation* [seek] to proceed directly against majority shareholders." *Aurora Credit*, 970 P.2d at 1280 (em-

phasis added); *see also Arndt*, 1999 UT 91, ¶ 20, 991 P.2d 584. As noted above, we do not reach the issue of whether the closely-held-corporation exception applies in this case given that Torian asserts only individual, not derivative, injury. *See supra* ¶ 26 n. 13. Consequently, we neither reject nor endorse the *Aurora Credit* standards, as they are not implicated in this case.

16. Utah Code section 16–10a–1330(1) provides that, "[i]f a demand for payment under Section 16–10a–1328 remains unresolved, the corporation shall commence a proceeding within 60 days after receiving the payment demand contemplated by Section 16–10a–1328, and petition the court to determine the fair value of the shares and the amount of interest. If the corporation does not commence the proceeding within the 60–day period, it shall pay each dissenter whose demand remains unresolved the amount demanded."

¶ 33 Nor do we read *Bingham Consolidation* to establish that point. Granted, the court in *Bingham Consolidation* did observe that "[i]n most jurisdictions, [the judicial appraisal proceeding under the dissenters' rights statute] is the sole remedy available to a shareholder dissenting to a merger." *Bingham Consolidation*, 2004 UT App 434, ¶ 30, 105 P.3d 365. And the *Bingham Consolidation* court also noted that "a dissenting shareholder should be limited to the [judicial] remedy when he claims, in essence, that the primary effect of the majority shareholder's breach of fiduciary duty was to diminish share value." *Id.* ¶ 31. But *Bingham Consolidation* does not establish the exclusivity of the dissenters' rights statute for the kind of claims asserted here.

¶ 34 To the contrary, *Bingham Consolidation* acknowledges that, although the judicial remedy prescribed in the dissenters' rights statute may sometimes be exclusive in a run-of-the-mill dilution case, exceptions to this rule exist in cases involving breach of fiduciary duty. *Id.* ¶ 30. In fact, the court went out of its way to note that "[t]he [judicial] appraisal remedy . . . may not be adequate in certain cases, particularly where fraud, misrepresentation, self-dealing, deliberate waste of corporate assets, or gross and palpable overreaching are involved." *Id.* (first and third alterations in original) (internal quotation marks omitted). Torian's claims clearly encompass this kind of breach.

¶ 35 Unlike the shareholders in *Bingham Consolidation,* Torian was not dissenting to a merger and even conceded that he did not contest the valuation of EnvironMax by IHS, Inc. And, as explained above, Torian's complaint is not simply that EnvironMax diluted the value of its shares; it is that EnvironMax specifically diluted *his* shares and those belonging to a certain class of minority shareholders, and that the issuance of those shares benefited the majority shareholders and their family members. Accordingly, we conclude that the district court erred in determining that Torian waived or forfeited his right to bring his individual claims directly by refusing to utilize the dissenters' rights statute.

## III

¶ 36 The district court erred in granting the Craigs' motion for summary judgment. Torian has asserted a claim of individual injury that allows him to move forward directly rather than derivatively, which claim is not foreclosed by the dissenters' rights statute. Accordingly, we reverse the decision of the district court and remand for proceedings consistent with this opinion.

Justice LEE authored the opinion of the Court, in which Chief Justice DURRANT, Associate Chief Justice NEHRING, Justice DURHAM, and Justice PARRISH joined.