*This opinion is subject to revision before final
publication in the Pacific Reporter*

**2018 UT 55**

IN THE

# SUPREME COURT OF THE STATE OF UTAH

ENERVEST, LTD.,
*Appellant,*

*v.*

UTAH STATE ENGINEER and MICHAEL CARLSON,
*Appellee.*

No. 20160394
Filed September 27, 2018

On Direct Appeal

Eighth District, Duchesne
The Honorable Samuel P. Chiara
No. 560800056

Attorneys:

John H. Mabey Jr., David C. Wright, Jonathan R. Schutz,
Salt Lake City, for appellant

Justin P. Matkin, Matthew E. Jensen, Salt Lake City,
for appellee Michael Carlson

Sean D. Reyes, Att'y Gen., Stanford E. Purser, Dep. Solic. Gen.,
Norman K. Johnson, Benjamin J. Jensen, Sarah M. Shechter,
Melissa Reynolds, Asst. Att'y Gens., Salt Lake City, for appellee
Utah State Engineer

JUSTICE HIMONAS authored the opinion of the Court, in which
CHIEF JUSTICE DURRANT, ASSOCIATE CHIEF JUSTICE LEE,
JUSTICE PEARCE, and JUDGE KATE TOOMEY joined.

Due to her retirement, JUSTICE DURHAM did not participate herein;
Court of Appeals JUDGE KATE TOOMEY sat.

JUSTICE PETERSEN became a member of the Court on
November 17, 2017, after oral argument on this matter
and accordingly did not participate.

———————————

JUSTICE HIMONAS, opinion of the Court:

## INTRODUCTION

¶1 "Water rights in the State of Utah are of utmost public concern. Water, in an arid state like Utah, is its life-blood, measured in currency represented by survival itself . . . . This court has likened a drop of water [to] a drop of gold." *Longley v. Leucadia Fin. Corp.*, 2000 UT 69, ¶ 15, 9 P.3d 762 (second alteration in original) (citations omitted) (internal quotation marks omitted). Therefore, it is no surprise that, in Utah, water rights have been preserved in our state constitution, codified by our legislature, and oft-contested in our state and federal courts.

¶2 This appeal stems from just such a contest over the state water engineer's resolution of who owns the water rights to Minnie Maud Creek, a tributary of the Green River. EnerVest, Ltd. (EnerVest)[1] asks us to review the district court's grant of summary judgment, which upheld the state engineer's proposed determination that The Minnie Maud Reservoir and Irrigation Company (Minnie Maud) is the owner of disputed water rights on Minnie Maud Creek and rejected the objections to the proposed determination made on those grounds. Before reaching this issue, however, we must first decide whether we have jurisdiction over the case.

¶3 We conclude that we do not. The district court's certification of its summary judgment ruling as final under Utah Rule of Civil Procedure 54(b) was improper and thus we do not have a final judgment before us for review. And we do not consider whether we should treat the appeal as a petition for interlocutory appeal under Utah Rule of Appellate Procedure 5 because we conclude that EnerVest was not aggrieved by the

_____

[1] This case stems from a long history of ownership and disputes over the water rights at issue. When we reference an action taken or not taken by a party to this case, we are including the party's predecessors in interest.

district court's decision and so lacks appellate standing. Therefore, we dismiss the appeal for lack of appellate jurisdiction.

**BACKGROUND**

I. GENERAL ADJUDICATION PROCESS

¶4 A general understanding of Utah's process for adjudicating water rights in cases like this one is helpful for grasping the issues in this appeal. When a justified petition of "five or more or a majority of water users" for a determination of water rights is given to the state engineer, the engineer files an action in the district court to determine the water rights (similar to a quiet title action). UTAH CODE § 73-4-1 (1953). The district court may then order a general adjudication, which will provide it guidance in establishing water rights.

¶5 "[T]he purpose of the general adjudication process is to prevent piecemeal litigation regarding water rights and to provide a permanent record of all such rights by decree." *Jensen v. Morgan*, 844 P.2d 287, 289 (Utah 1992).

> When a general adjudication is initiated, the state engineer notifies all known water rights holders and provides public notice of the adjudication by publication. After the state engineer provides notice, all individuals and entities are required to submit any water rights claims within the area in question to the state engineer. Following the submission of water rights claims, the state engineer conducts a hydrographic survey of the water system and evaluates the submitted claims.

*In re Gen. Determination of Rights to the Use of Water*, 2004 UT 106, ¶ 6, 110 P.3d 666 (citations omitted). A party who fails to timely file a claim "shall be forever barred and estopped from subsequently asserting any rights, and shall be held to have forfeited all rights to the use of the water theretofore claimed by him." *Utah State Eng'r v. Johnson*, 2018 UT App 109, ¶ 19 (citation omitted) (internal quotation marks omitted).

¶6 "When the survey is complete and all of the submitted claims have been evaluated, the state engineer then prepares a proposed determination of water rights for the area." *In re Gen. Determination of Rights to the Use of Water*, 2004 UT 106, ¶ 6. "A copy of the proposed determination is mailed to each claimant, along with a notice that any claimant dissatisfied with the

proposal may file a written objection within ninety days." *Johnson*, 2018 UT App 109, ¶ 20. "[A] claimant who . . . fail[s] to timely object . . . takes on the role of a defaulting party and is bound by its failure . . . unless and until the claimant seeks leave from the court overseeing the general adjudication to file an untimely objection . . . ." *Id.* ¶ 21. "If no objection has been filed to a proposed determination, or if all objections have been resolved, the district court must enter judgment rendering the proposed determination the final adjudication of water rights for the given area." *In re Gen. Determination of Rights to the Use of Water*, 2004 UT 106, ¶ 7.

## II. PROCEEDINGS BELOW

¶7    In the early 1900s, several owners of water rights on Minnie Maud Creek filed articles of incorporation for Minnie Maud and transferred their water rights to the newly formed corporation. The relevant parties in this case transferred their rights to Minnie Maud in exchange for shares in Minnie Maud.

¶8    In 1956, this general adjudication, which includes Minnie Maud Creek, was initiated. The state engineer issued a proposed determination in 1964, allocating twelve water rights to Minnie Maud. In the following months, four different objections were filed, challenging a total of eight of the water rights provided to Minnie Maud. Each of the four objections raise several different challenges, but all of the objections argue that Minnie Maud could not be the owner of the water rights, either because Minnie Maud never legally existed or because it was a defunct corporation. EnerVest did not file an objection, and the water rights it now claims are not directly challenged by the objections.[2]

¶9    In 2012, EnerVest filed a petition under Utah Code section 73-4-24(1) to expedite a hearing on the objections. The district court granted the petition but limited the scope of the

---

[2] EnerVest is claiming ownership of water rights 90-24 and 90-196. These water rights are provided to Minnie Maud in the proposed determination and are not at issue in the objections. Additionally, it is unclear from the record whether EnerVest submitted a claim to the state engineer for these water rights. We will assume, for purposes of this appeal, it complied with the requirements for filing a claim.

section 24 hearing to whether the proposed determination correctly lists Minnie Maud as the owner of the water rights.

¶10 Several parties participated in the section 24 hearing, including non-objectors, EnerVest and Michael Carlson, and objectors, the Willis A. and Wilma Hammerschmid Trust (the Hammerschmid Trust) and Gary and Nancy Motte. Eventually the parties filed cross-motions for summary judgment, with EnerVest and the Hammerschmid Trust arguing that Minnie Maud could not own the water rights and Carlson arguing that the state engineer correctly deemed Minnie Maud the owner of the water rights. The district court granted Carlson's motion for summary judgment and denied EnerVest's and the Hammerschmid Trust's motions for summary judgment. At the parties' request, the district court certified its decision as final under Utah Rule of Civil Procedure 54(b). EnerVest and the Hammerschmid Trust appealed.

¶11 During the pendency of the appeal, before the briefing schedule was even set, the Hammerschmid Trust's appeal was voluntarily dismissed with prejudice. As a result, Carlson challenges EnerVest's standing to appeal.

## STANDARD OF REVIEW

¶12 "Whether appellate jurisdiction exists is a question of law, which we review for correctness. Additionally, [w]hether a district court's judgment is final is a question of law, which we can consider for the first time on appeal." *First Nat'l Bank v. Palmer*, 2018 UT 43, ¶ 5, __ P.3d __ (alteration in original) (citations omitted) (internal quotation marks omitted).

¶13 "[S]tanding is jurisdictional and [a challenge] may be brought at any" time. *Brown v. Div. of Water Rights of Dep't of Nat. Res.*, 2010 UT 14, ¶ 15, 228 P.3d 747. "[T]he question of whether a given individual or association has standing to request a particular relief is primarily a question of law." *Alpine Homes, Inc. v. City of West Jordan*, 2017 UT 45, ¶ 10, 424 P.3d 95 (citation omitted) (internal quotation marks omitted).

## ANALYSIS

¶14 On appeal, there are two jurisdictional issues for our review. First, the district court certified its grant of summary judgment to Carlson and denial of partial summary judgment to EnerVest and the Hammerschmid Trust as final under Utah Rule of Civil Procedure 54(b). We conclude that the district court's

summary judgment decisions did not meet the criteria for proper rule 54(b) certification.

¶15  Second, Carlson challenges EnerVest's standing to pursue an appeal of the rejection of other parties' objections. We agree with Carlson and conclude that EnerVest lacks standing to appeal. Therefore, we decline to consider whether the defects in the rule 54(b) certification could otherwise be cured by treating the appeal as a petition for permission to file an interlocutory appeal under Utah Rule of Appellate Procedure 5(a).

## I. FINAL JUDGMENT

¶16  The first jurisdictional issue we must address is whether this case presents a final judgment over which we have jurisdiction on appeal. Unless one of three exceptions is met, we lack appellate jurisdiction over a judgment that does not "end[] the controversy between the litigants." *Copper Hills Custom Homes, LLC v. Countrywide Bank, FSB*, 2018 UT 42, ¶¶ 10, 13–15, __ P.3d __ (citation omitted) (internal quotation marks omitted). Certification by a district court as final under Utah Rule of Civil Procedure 54(b) provides one of those exceptions. *Id.* ¶ 15.[3]

¶17  In order to be appropriately certified as final under Utah Rule of Civil Procedure 54(b), three requirements must be met: (1) "there must be multiple claims for relief or multiple parties to the action;" (2) "the judgment appealed from must have been entered on an order that would be appealable but for the fact that other claims or parties remain in the action;" and (3) "the [district] court, in its discretion, must make a[n express] determination that there is no just reason for delay." *Id.* ¶ 16 (alterations in original) (citation omitted) (internal quotation marks omitted). Additionally, the district court must "set forth a clear rationale as to why there is no just reason" for delay. *Id.* ¶ 27.

¶18  The district court's 54(b) certification suffers from three flaws. First, the district court did not offer a rationale for why it determined there is no just reason for delay. This omission, in and of itself, "functions as a *practical* bar to our appellate jurisdiction." *Id.*

---

[3] The other two exceptions are statutorily provided avenues and interlocutory appeals under Utah Rule of Appellate Procedure 5(a). *Copper Hills*, 2018 UT 42, ¶¶ 13–14.

¶19 Second, the district court's underlying order granted summary judgment to Carlson and denied partial summary judgment to EnerVest and the Hammerschmid Trust. And the district court's rule 54(b) certification order attempted to certify its ruling on all three motions as final. But the denial of EnerVest's and the Hammerschmid Trust's motions for partial summary judgment is not an "order that would be appealable but for the fact that other claims or parties remain in the action" because they are not final. *Id.* ¶ 16 (citation omitted) (internal quotation marks omitted); *see also Denison v. Crown Toyota Motors, Inc.*, 571 P.2d 1359, 1360 (Utah 1977) (dismissing an appeal "from the denial of [a] motion for summary judgment . . . because it is not from a final order").

¶20 Finally, the district court's grant of summary judgment to Carlson holds "that the State Water Engineer correctly determined that the Water Rights were owned by Minnie Maud." The nature of a general adjudication prevents complete finality of any water rights until the entire general adjudication has been completed. As we have long recognized,

> [i]f a court were allowed to enter final judgments of individual rights in a suit for general adjudication before the state engineer has made his survey, report, determinations and recommendations as provided for in the statute, the very purpose of the statute, which we have shown is to avoid piecemeal litigation, would be circumvented. Of course, as a practical proposition the court may often be obliged to hold hearings as between individual claimants and enter *interlocutory decrees*, but no final judgment should be entered until all the rights of all the claimants can be adjudicated.

*Watson v. Dist. Court of First Judicial Dist. in and for Cache Cty.*, 163 P.2d 322, 323 (Utah 1945) (emphasis added).

¶21 Therefore, this appeal is not appropriately before us under Utah Rule of Civil Procedure 54(b). We have the discretion under Utah Rule of Appellate Procedure 5(a) to treat an appeal from an order certified under rule 54(b) that is not actually final "as a petition for permission to appeal an interlocutory order." Because we conclude that EnerVest lacks standing on appeal, we do not exercise this discretion here and therefore lack appellate jurisdiction.

## II. ENERVEST IS NOT AN AGGRIEVED PARTY AND LACKS APPELLATE STANDING

¶22 "Merely because a party appears in the district court proceedings does not mean that the party automatically has standing to appeal the judgment rendered by that court." *Scottsdale Ins. Co. v. Knox Park Constr., Inc.*, 488 F.3d 680, 684 (5th Cir. 2007) (citation omitted) (internal quotation marks omitted).

> On appeal, a party whose standing is challenged must show that he or she had standing under the traditional test in the original proceeding before the district court. In addition, an appellant generally must show both that he or she was a party or privy to the action below and that he or she is aggrieved by that court's judgment.

*Chen v. Stewart*, 2005 UT 68, ¶ 50, 123 P.3d 416 (citation omitted). Carlson does not dispute that EnerVest had standing to participate in the proceedings below.[4] And EnerVest did participate in the action below. Therefore, the only disputed question of appellate standing is whether EnerVest was aggrieved by the district court's decision.

¶23 An aggrieved party is one "whose personal, pecuniary, or property rights have been adversely affected . . . by a court's decree or judgment." *Aggrieved Party*, BLACK'S LAW DICTIONARY (10th ed. 2014). "An aggrieved party must have been affected or prejudiced by the order . . . ." 4 C.J.S. *Appeal and Error* § 251 (2018). A party may be "aggrieved by a judgment that establishes or divests property rights," but "[a] judgment affecting only property does not aggrieve a party who has or claims no title or interest in that property." *Id.*

---

[4] In order to have standing to bring a section 24 petition, a claimant must have a "direct interest" in the objection for which the expedited hearing is sought. UTAH CODE § 73-4-24(1). Because we conclude that EnerVest lacks standing to appeal, we need not decide whether a non-objecting party, whose rights under the proposed determination are not at issue in the objection, has a "direct interest" in the objection for the purposes of participating in a section 24 hearing.

¶24 Additionally, "[i]t is hornbook law that a party may only appeal to protect its own interests, and not those of a coparty." *Morrison-Knudsen Co., Inc. v. CHG Int'l, Inc.*, 811 F.2d 1209, 1214 (9th Cir. 1987) (citation omitted) (internal quotation marks omitted); *see also Libby, McNeill, & Libby v. City Nat'l Bank*, 592 F.2d 504, 511 (9th Cir. 1978) ("It is, of course, a familiar principle that only a party aggrieved by a final judgment may appeal from it. It follows that a party may only appeal to protect its own interests, and not those of a coparty." (citations omitted) (internal quotation marks omitted)). "An indirect financial stake in another party's claims is insufficient to create standing on appeal." *Morrison-Knudsen*, 811 F.2d at 1214.

¶25 EnerVest fails to address why it would be aggrieved for purposes of appellate standing.[5] However, the state engineer filed a brief arguing that EnerVest was aggrieved for the purposes of appellate standing because "it is entitled to less of a proportionate interest in the disputed water rights than it would receive if the district court had ruled in the Objectors' and EnerVest's favor."

¶26 This may technically be correct—EnerVest may ultimately benefit from another water claimant's objection to the proposed determination. But that does not answer the legal question of whether EnerVest was aggrieved by the district court's decision and can pursue the denial of other parties' objections to the proposed determination.

---

[5] Instead, EnerVest focuses a majority of its briefing on whether it had standing to participate in the section 24 hearing. It also appears to argue that some notions of traditional and alternative standing apply to appellate standing, but it undertakes no analysis on whether or how those notions apply in the context of appellate standing. And, while it points to Utah Code section 73-4-16, which provides that "[t]here shall be a right of appeal from a final judgment of the district court to the Supreme Court as provided in Section 78A-3-102," it makes no argument that this statute somehow exempts it from the appellate standing requirement of being an aggrieved party. "[W]e are not a depository in which [a party] may dump the burden of argument and research," and we will not consider these inadequately briefed arguments on appeal. *Espenschied Transp. Corp. v. Fleetwood Servs., Inc.*, 2018 UT 32, ¶ 19, 422 P.3d 829 (second alteration in original) (citation omitted) (internal quotation marks omitted).

¶27 Despite EnerVest not filing its own objection, it is now argued that EnerVest is aggrieved by the district court's rejection of *other parties'* objections and determination that the state engineer correctly deemed Minnie Maud the owner of the water rights in question. This cannot be the case. Concluding that EnerVest has a sufficient interest in another party's objection to be aggrieved by the rejection of that objection would run against EnerVest's status as a defaulting party, conflict with the requirement of filing a timely objection, and undercut one of the main purposes of general adjudication lawsuits.

*A. EnerVest is a Defaulting Party and Cannot Be Aggrieved*

¶28 First, EnerVest cannot be aggrieved by the district court's decision here because it failed to object to the proposed determination and its rights under the proposed determination have not been altered. Water claimants who are dissatisfied with the water rights given to them in the proposed determination are required to file an objection to the proposed determination with the court within ninety days of receiving notice of the proposed determination. UTAH CODE § 73-4-11.[6] For almost a century we have stated that "if [a] claimant makes no objection [to the proposed determination], he, by his silence, does in legal effect precisely what every other person who is sued and makes default does, namely, confesses the statements contained in the engineer's proposed determination of his water rights." *Eden Irrigation Co. v. Dist. Court of Weber Cty.*, 211 P. 957, 960 (Utah 1922); *see also Butler, Crockett & Walsh Dev. Corp. v. Pinecrest Pipeline Operating Co.*, 2004 UT 67, ¶ 22, 98 P.3d 1 ("A claimant who fails to file a timely objection to the proposed determination demonstrates acquiescence to the state engineer's delineation of water rights."); *U.S. Fuel Co. v. Huntington-Cleveland Irrigation Co.*, 2003 UT 49,

---

[6] Prior to 2013, Utah Code section 73-4-11 did not explicitly provide a requirement to file an objection within ninety days. 2013 Utah Laws 1149. Instead, the law merely provided that the engineer must give each claimant "notice that any claimant dissatisfied therewith may *within ninety days of* [the mailing of the proposed determination] *file with the clerk of the district court a written objection thereto.*" *Butler, Crockett & Walsh Dev. Corp. v. Pinecrest Pipeline Operating Co.*, 2004 UT 67, ¶ 22, 98 P.3d 1 (citation omitted). We have long recognized parties as defaulting parties under that language. *Id.*

¶ 19, 79 P.3d 945 ("[T]he fate of a water right claimant who fails to object to a proposed award [is] similar to that of a defaulting party in a lawsuit. [I]f the claimant makes no objection, he, by his silence, . . . confesses the statements contained in the engineer's proposed determination of his water rights, and thus a judgment may legally be entered in accordance with the proposed determination of the engineer." (third and fourth alterations in original) (citation omitted) (internal quotation marks omitted)). Therefore, a claimant's "failure to file an objection within the statutory period prevents him from . . . contesting the disposition" of water rights. *Butler, Crockett & Walsh*, 2004 UT 67, ¶ 23.

¶29 After its ninety-day period to object expired, EnerVest became a defaulting party that "confesse[d] the statements contained in the engineer's proposed determination of [its] water rights" and thereby acquiesced to the rights provided it under the proposed determination. *Id.* ¶ 22 (citation omitted) (internal quotation marks omitted). That proposed determination remains intact after the district court's ruling; EnerVest's rights have not changed from those to which it acquiesced it was entitled decades ago.

¶30 The proposed determination awarded the water rights at issue to Minnie Maud. EnerVest failed to file an objection within the ninety-day period provided and thereby, in legal effect, confessed to Minnie Maud's ownership of these water rights. EnerVest cannot now, on appeal, retract its confession to the statements contained in the proposed determination, undo its default, and argue that it is entitled to greater water rights than provided it under the proposed determination. Its "failure to file an objection within the statutory period prevents [it] from now contesting the disposition" of the water rights, *id.* ¶ 23, and makes it "incapable of claiming [the water rights]" "as a matter of law," *id.* ¶ 28.

¶31 Therefore, EnerVest has no interests in the water rights—at least no interests it can champion as a defaulting party—that have been adversely affected by the district court's decision that leaves the proposed determination intact. Additionally, because EnerVest is "incapable of claiming [the water rights]," *id.*, it cannot be aggrieved by the district court's judgment, *see* 4 C.J.S. *Appeal and Error* § 251 (2018) ("A judgment affecting only property does not aggrieve a party who has or claims no title or interest in that property.").

### B. EnerVest Cannot Use an Appeal of Another Party's Objection to Circumvent the Requirement to Object

¶32 Second, concluding that EnerVest has a sufficient interest in another party's objection to be aggrieved by the denial of that objection is contrary to the individual requirement to file an objection found in Utah Code section 73-4-11 and the process for extending the time to file an objection in Utah Code section 73-4-10. We have previously noted that "claimants should be immediately aware of any possible objection as soon as they see the proposed determination" because they are aware of the water claims they submitted and can determine if the proposed determination "does not match the contours of [their] submitted claim[s]." *In re Gen. Determination of Rights to the Use of Water*, 2004 UT 106, ¶ 27, 110 P.3d 666. Therefore, we find it "difficult to see how actions taken by a subsequent claimant could cause a previously nonexistent objection to suddenly come into existence." *Id.*

¶33 A district court has the ability to extend the objection period "upon due cause shown." UTAH CODE § 73-4-10(1). In interpreting that section, we said that "the existence of the time limitation contained in section 73-4-11, coupled with the laudable goal of certainty, reveals that the legislature did not intend section 73-4-10 to provide an escape hatch for water claimants that simply neglect to pursue their claims." *In re Gen. Determination of Rights to the Use of Water*, 2004 UT 106, ¶ 41.

¶34 Allowing EnerVest to pursue another party's objection on appeal, without itself ever filing an objection, would undermine both the time limitation in section 73-4-11 and the requirement of proving due cause to get an extension for filing an objection set forth in section 73-4-10. There is nothing in our case law or the statutory text to warrant such a result.

¶35 Hearings on an objection occur in one of two ways. First, a water claimant with a "direct interest" in a "valid, *timely* objection" may file a petition under section 73-4-24 for an expedited hearing on that objection. UTAH CODE § 73-4-24(1) (emphasis added). A court should grant that petition if it "will facilitate a reasonably prompt resolution *of the matters raised in the objection*." *Id.* § 73-4-24(4) (emphasis added). If no section 24 petition is filed, the court will eventually hear the objection as a matter of course as part of the general adjudication. Before a hearing on an objection, the court must give all claimants notice of when "the *matter* will be heard." *Id.* § 73-4-13 (emphasis added).

This language does not suggest that a water claimant participating in a hearing on an objection has the right to make or pursue an objection that it did not itself timely lodge. Instead, the hearing is on the objection that was filed.

¶36 EnerVest would have known of its potential objection immediately upon the proposed determination's release. At that time, it had the option of objecting to the proposed determination or acquiescing in its allocation. EnerVest chose the latter and has not argued that there is due cause to excuse its failure to file an objection. The right to participate, if any,[7] in a hearing on the objection under sections 73-4-13 or 73-4-24 does not serve as an "escape hatch for water claimants that simply neglect to pursue their claims." *In re Gen. Determination of Rights to the Use of Water*, 2004 UT 106, ¶ 41. And the right to be heard is not always coterminous with the ability to be aggrieved. *See Wash. Cty. Water Conservancy Dist. v. Morgan*, 2003 UT 58, ¶ 15, 82 P.3d 1125.

---

[7] In 1935, we interpreted a previous statutory requirement to provide notice "to all claimants" regarding when and where the objection would be heard. *Plain City Irrigation Co. v. Hooper Irrigation Co.*, 51 P.2d 1069, 1072 (Utah 1935). We concluded that

> the intent of the statute is to require notice to all adverse claimants, or all claimants whose rights would be affected or drawn in question. It would also seem that if a claimant or claimants have objections or their rights could be affected adversely, such claimant or claimants are entitled to notice as required by the statute . . . .

*Id.* We have not had the opportunity to revisit this holding under the current statutory framework or to consider whether a claimant's status as a defaulting party impacts whether they have rights that could be adversely affected, and therefore are entitled to notice of and to participate in the section 13 hearing. Nor have we had the opportunity to consider which parties are entitled to petition for or participate in a section 24 hearing. These questions may rest on a "notion of 'standing'" that is "not the traditional sense of that term." *State v. Brown*, 2014 UT 48, ¶ 15 n.2, 342 P.3d 239. In a sense, they are questions of "party status": to be "legally eligible—or in this sense to have *standing*—to participate in certain proceedings, a person or entity must also qualify as a proper party." *Id.*

¶37  In this case, the section 24 hearing was held on objections other parties had filed challenging Minnie Maud's existence. EnerVest cannot use that hearing as a mechanism to lodge its own objection on those grounds. While a non-objecting party's interests may ride an objector's coattails as far as the objector wishes to go, the non-objecting party cannot drag the objector across the finish line against the objector's will. To allow this would undermine the individual requirement of filing a timely objection, UTAH CODE § 73-4-11, or excusing the failure to timely file an objection for due cause, *id.* § 73-4-10(1). Therefore, EnerVest does not have a sufficient interest in another party's objection to be aggrieved by a district court's denial of that objection.

*C. Allowing EnerVest to Pursue Another Party's Objection Would Undermine the Goals of General Adjudications*

¶38 Third, deeming EnerVest sufficiently interested in another party's objection to be aggrieved by the district court's decision would undermine "[o]ne of the key goals of the general adjudication process[:] to remove doubts about the validity of water rights." *In re Gen. Determination of Rights to the Use of Water*, 2004 UT 106, ¶ 41. Challenges to water rights allocated under a proposed determination must initiate within the general adjudication. *U.S. Fuel Co. v. Huntington-Cleveland Irrigation Co.*, 2003 UT 49, ¶¶ 18–20, 79 P.3d 945. If no challenge to a water right is filed, Utah Code "section 73-4-12 requires the court to enter judgment consistent with uncontested elements of a proposed determination." *Id.* ¶ 12. As a result, a water claimant that receives rights under an uncontested portion of a proposed determination receives a right to obtain a judgment that provides it the water rights allocated to it under the proposed determination. *Id.* ¶ 20. A non-objecting party cannot mount a collateral attack on this right outside of the general adjudication proceeding. *Id.* ¶ 18.[8]

---

[8] Conversely, "[o]nce an objection to a proposed determination of water rights has been properly filed in a general adjudication proceeding, the objecting party is at liberty to pursue separate adjudication of private claims." *U.S. Fuel*, 2003 UT 49, ¶ 18. This option for objecting parties also supports the conclusion that EnerVest lacks a sufficient interest in the objections to be aggrieved by their denial.

(continued …)

¶39 If an objection is filed, the district court must hold a hearing on the objections and "enter[] judgment on the contested claims." *Murdock v. Springville Mun. Corp.*, 878 P.2d 1147, 1150 (Utah 1994) (citations omitted); *see also* UTAH CODE § 73-4-15. But those hearings are limited to the objections that are filed. *See supra* ¶ 35. By the end of the ninety-day objection period, a water user with rights under the proposed determination will know whether his or her rights are challenged and, if so, which rights and by whom. This allows "subsequent appropriators [to] rely upon [these recorded water rights] before making their investments." *In re Gen. Determination of Rights to the Use of Water*, 2004 UT 106, ¶ 41 (citations omitted) (internal quotation marks omitted).

¶40   Accordingly, the requirement of objecting to a proposed determination "furthers the goal of certainty by reassuring water claimants that their rights are, in large part, *immune from attacks* by *claimants that have allowed their ninety-day objection period to expire.*" *Id*. (emphases added).[9] But EnerVest is attempting to do just that on appeal—attack Minnie Maud's rights under the proposed determination despite allowing its ninety-day objection period to expire more than half a century ago.

---

Both a party receiving water rights under the proposed determination and an objecting party have the ability to litigate that dispute in a private suit. *Id.* Therefore, the objecting party must, out of necessity, have the ability to control its objection and withdraw the objection if that party settles with the party receiving water rights. EnerVest wants us to determine that a non-objecting party's potential indirect benefit from an objection creates an interest in the objection substantial enough to be aggrieved by, and appeal, its denial without the objecting party's involvement. This would undermine and be contrary to the right to litigate the objection outside of the general adjudication without the non-objecting party's involvement.

[9] The exception we recognized in that case was the district court's "authority [under Utah Code section 73-4-10] to grant a retroactive extension to the objection period . . . when a water claimant can show due cause justifying the objection's untimeliness." *In re Gen. Determination of Rights to the Use of Water*, 2004 UT 106, ¶ 41.

¶41 It is clear from the record, and EnerVest does not dispute, that EnerVest's predecessor in interest did not file an objection to the proposed determination. Therefore, EnerVest is a claimant that allowed its time period to lapse. However, EnerVest's position might doubly undermine the goal of certainty. EnerVest is only claiming two of the twelve water rights allocated to Minnie Maud, water rights 90-24 and 90-196. According to EnerVest, it "owns all the lands comprising the authorized places of use for" those two water rights. It is unclear whether objections were ever filed that directly challenge Minnie Maud's rights to those two water rights,[10] especially given that EnerVest's predecessors in interest—the landowners with interests in receiving those two water rights associated with their land—never filed an objection. If no objections filed actually challenge Minnie Maud's right to water rights 90-24 and 90-196, not only would Minnie Maud be subject to attack by a claimant who allowed its objection period to expire, but also subject to attack on otherwise uncontested water rights.[11] Opening up water right owners to these types of attacks undercuts the objective of establishing certainty through a general adjudication, so we decline to recognize EnerVest as having such an interest in another party's objection. And therefore EnerVest cannot be aggrieved for purposes of appeal.

¶42 For these three reasons, EnerVest cannot have a sufficient interest in another party's objection to be aggrieved by the denial of that objection for the purposes of appellate standing. While it may technically be the case that EnerVest would benefit from the district court granting the objections and stripping Minnie Maud of its water rights under the proposed determination, EnerVest, as a defaulting party, lacks the legal ability to argue that it is entitled to more rights than those to which it acquiesced when it failed to object to the proposed determination. And, without the

---

[10] For example, the Hammerschmid objection challenges the state engineer's determination that Minnie Maud was the owner of water rights 90-188 and 90-189—rights associated with land being sold to the Hammerschmids.

[11] We have never considered whether an objection can be used, either by the objector or by another claimant, to attack otherwise uncontested water rights under a proposed determination. While we need not decide that issue today, we flag it for future cases.

participation of the objector, it cannot champion the objection on appeal.

¶43 This does not mean, as EnerVest suggests, that a non-objecting party could never appeal a district court's ruling on an objection.[12] There will often be times that claimants receive exactly that which they request and the proposed determination directly reflects the entirety of the claim they filed. In that case, such claimants will have no reason to object and will become, in a sense, defaulting parties. However, if an objection is made on the water rights they receive under the proposed determination, and the court grants the objection in a way that negatively impacts the water rights the defaulting party is to receive under the proposed determination, those claimants will be aggrieved by the district court's decision and can appeal. A party would also have standing to challenge a district court's decision deeming it a non-objecting (defaulting) party. *See VP Props. & Devs., LLP v. Seneca Specialty Ins. Co.*, 645 F. App'x 912, 915 (11th Cir. 2016) (noting that a defaulting party has "standing to appeal the default judgment against it").

¶44 Similarly, if a claimant timely objects to a proposed determination and the district court does not grant the objection

_____

[12] Specifically, EnerVest notes that, "[a]ccording to [Carlson], had the court granted EnerVest's motion, he—as a claimant and not an objector—would have no appellate standing." EnerVest could be right. Carlson has been acting on his own behalf, and not derivatively on Minnie Maud's behalf. *See Torian v. Craig*, 2012 UT 63, ¶ 16, 289 P.3d 479 (recognizing that a shareholder can only sue individually, rather than derivatively, if it can show "an injury to him- or herself that is distinct from that suffered by the corporation" (citation omitted)); *cf. Richardson v. Ariz. Fuels Corp.*, 614 P.2d 636, 638–39 (Utah 1980) ("A class action and a derivative action rest upon fundamentally different principles of substantive law; to ignore those differences is not a minor procedural solecism. . . . Suits which are said to be derivative . . . are those which seek to enforce any right which belongs to the corporation and is not being enforced . . . ." (citation omitted) (internal quotation marks omitted)). Carlson would have to show that he was personally injured by the district court's modification to the rights in the proposed determination in order to have standing to appeal.

(and the corresponding water rights) in its entirety, that claimant will likewise be aggrieved and able to appeal. But EnerVest does not fit into any of these categories and therefore is not aggrieved by the district court's decision.

## CONCLUSION

¶45 EnerVest failed to file a timely objection to the proposed determination. While EnerVest may technically benefit from other parties' objections, it became a defaulting party that lacks a sufficient interest in those objections to be aggrieved by their denial for the purpose of appellate standing. It may be that a non-objecting party's interests can piggyback on another party's objection, but only as far as the objecting party is willing to travel. Once the objecting party chooses to end its objection's journey, the non-objecting party cannot take over.

¶46 The district court's rule 54(b) certification was insufficient to confer appellate jurisdiction upon this court because the requirements for certification were not met, and therefore there is no final judgment for our review. Having determined that EnerVest lacks appellate standing because it is not an aggrieved party, we decline to exercise our discretion to treat this appeal as a petition for interlocutory appeal. We therefore dismiss the appeal for lack of appellate jurisdiction.

———————